Nos. 45,773 and 45,774
(Consolidated)

STATE OF KANSAS, *Appellee*, v. HENRY D. THOMAS, *Appellant*.

(481 P. 2d 964)

Opinion filed March 6, 1971.

*Orval L. Fisher*, of Wichita, argued the cause, and was on the brief for the appellant.

*Reese C. Jones*, Deputy County Attorney, argued the cause, *Vern Miller*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: These appeals are from convictions in separate cases which were consolidated for trial in the district court of Sedgwick County. The appeals have been consolidated for hearing in this court and we shall refer to them in the singular.

Defendant's principal ground for reversel is that consolidation of the cases, under the circumstances shown to exist, amounted to prejudicial error.

The two cases having been tried together over the timely protest of defendant, our inquiry on appellate review is whether the record indicates sufficient possibility of prejudice by reason of such consolidation for trial as to require reversal. We believe it does.

In district court case No. CR5282, which was docketed in this court on appeal as No. 45,773, defendant was charged with second degree burglary and larceny in connection therewith (K. S. A. 21-520 [now 1970 Supp. 21-3715, 21-3716], and K. S. A. 21-524 [repealed L. 1969, Ch. 180, Sec. 21-4710, effective July 1, 1970]); three counts of forgery in the second degree (K. S. A. 21-608 [now 1970 Supp. 21-3710, 21-3711]); and three counts of uttering in the second degree (K. S. A. 21-609 [now 1970 Supp. 21-3710, 21-3711]). Defendant was convicted on all of the counts enumerated.

In district court case No. CR5283, which was docketed in this court on appeal as No. 45,774, defendant was charged with first degree murder for the killing of one Jerry Dean Faidley while in the commission of a felony, under (K. S. A. 21-401 [now 1970 Supp. 21-3401]); robbery in the first degree (K. S. A. 21-527 [now 1970 Supp. 21-3427]); and unlawful possession of a pistol (K. S. A. 21-2611 [now 1970 Supp. 21-4204]). Defendant was convicted on all three counts charged in CR5283. The jury assessed the penalty of life imprisonment on the charge of murder in the first degree.

For convenience the two cases will be referred to as the forgery case and the murder case.

Defendant filed a motion for a new trial which was overruled.

The district court imposed life imprisonment on the conviction of first degree murder and sentences on each of the other nine counts, directing that they be served concurrent with each other, but consecutive with the life imprisonment sentence on the murder conviction.

The charges stem from a series of events which occurred during the last week of July and the first five days of August 1968.

About 1:30 a. m. on August 5, 1968, Patrolman Doyle Dyer, of the Wichita Police Department, was performing routine patrolling (checking buildings and cars) in the neighborhood of First and St. Francis Streets, in the downtown area of the city. He noticed a "colored male," later identified as defendant, walking west on the

south side of First Street, approximately one-half block west of Hydraulic Avenue. Officer Dyer drove around the block and again noticed the same subject; Dyer pulled over to the curb and asked defendant his name, defendant answered "Tommy Johnson." Dyer then asked defendant to have a seat in the patrol car. Defendant sat in the front seat beside Dyer, the dome light was on. In answer to questions asked by Dyer, defendant stated "that he'd just left the Starlite Club" and, he was going to the bus station to get something to eat. At this point an automobile pulled up along the side of Dyer's car and Dyer testified—

". . . they probably wanted my services for something so I told the subject I had with me to——or that he was free to go, and at this time the Falcon pulled up beside of me and there was one white man and a woman and the man who was driving the car stated that there was an officer standing by 1st and Hydraulic and that somebody had been badly beaten."

Dyer stated that defendant got out of the automobile and went south on Pennsylvania. Dyer then proceeded to First and Hydraulic where he met Officer Carl Pope. The two officers investigated a "dark green '56 Pontiac, two door," which was setting in the intersection of First and Hydraulic. They found a body "sitting in the passenger's side of the front seat." The body was later identified as that of Jerry Dean Faidley. The officers found a bullet hole in Faidley's head, determined that he was probably dead, and called for assistance from the Police Department. They were unable to find identification on the body of Faidley.

The automobile in which Faidley's body was found was discovered by Walter R. Rutherford, who was employed by the Central Bureau of Investigation. He saw Faidley's automobile in the intersection of First and Hydraulic and on inspection found Faidley sitting in the front seat "with his head back over the top of the seat." Rutherford asked a passerby to notify the Wichita Police and Dyer and Pope arrived soon thereafter.

Investigation of the Faidley automobile revealed fingerprints on a whiskey bottle and on the left hand door glass, which proved to be those of defendant.

Several witnesses saw defendant and Faidley together at the Starlite Club. One witness testified they left the Club together about 12:30 a. m. on August 5.

On August 6, 1968, a search party combed the area around First and Hydraulic. The searchers found a billfold belonging to Faidley

and a number of cards and pictures scattered about, which were identified as Faidley's. Further investigation led to the discovery of defendant's fingerprints on a pop bottle and on a pistol, found in a locker at the bus terminal. Comparison of test bullets fired from the pistol, with the death bullet removed from Faidley's brain, indicated that the death bullet could have been fired from the pistol, but no definite conclusion was made by the examining expert.

Concerning the burglary, forgery and uttering charges in case No. 45,773, the state's evidence established that credit cards were stolen from the automobile of William D. Sadler while it was parked in a parking lot on July 25, 1968. There was further evidence that the office of Don D. Rutherford Company, Inc., was burglarized on July 31, 1968, printed checks of one Bessie Webb, dictating equipment, company checks, two antique pistols, and a paymaster check protector were taken in the burglary. Checks forged on the Bessie Webb printed check forms, presented for cashing by defendant with Sadler's credit cards as identification, served as a basis for the forgery, uttering and burglary charges.

Defendant was arrested during the afternoon of August 5, 1968, at Henry's Inc., in downtown Wichita, where he was attempting to cash a check, which had been stolen in the Rutherford burglary on July 31, 1968, on which he had forged the signatures of Bessie Webb as payer and that of William D. Sadler as endorsee.

Two separate complaints were filed against defendant. Counsel was appointed and a preliminary hearing was had in each case. After informations were filed in the district court the state moved that the two cases be consolidated for trial. The defendant objected and the trial court took the matter under advisement. When the trial court announced its ruling sustaining the state's motion, the defendant renewed his objection.

Defendant contends the state's proposal to consolidate was intended to prejudice the defendant's defense to the robbery and murder charge by showing the prior and unconnected offenses of forgery, uttering and burglary.

Defendant claims the prejudice resulting from the erroneous consolidation was compounded because the trial court failed to instruct the jury that the evidence pertaining to the forgery case should be limited to only that case and as a result the jury was left free to convict defendant of murder because he was a forger.

Defendant says the offenses charged in the two informations were not of the same general character, the two cases did not require the same mode of trial; that the evidence of guilt in the hands of the state in the forgery case was documented and overwhelming, while the evidence in the murder case was mostly circumstantial; and that there was no real overlapping of evidence in the two cases. Defendant further points out that the same kind of punishment was not involved—that an extensive *voir dire* examination concerning capital punishment was necessary in the murder case, while capital punishment was not involved in the forgery case.

Defendant asserts the consolidation of the two cases far exceeded acceptable guidelines for joinder and consolidation established by this court.

Defendant does not challenge the joinder of the separate offenses within the respective informations. He attacks only the consolidation of the two cases for trial.

In this connection it should be noted there is no distinction in the application of rules governing joinder of offenses within an information and those pertaining to consolidation of informations for trial. (*State v. Anderson*, 202 Kan. 52, 446 P. 2d 844; and *State v. Browning*, 182 Kan. 244, 320 P. 2d 844.)

It has long been the rule in this jurisdiction that where separate and distinct felonies are charged in separate counts of one and the same information and all of the offenses are of the same general character, requiring the same mode of trial, the same kind of evidence and the same kind of punishment, the defendant may be tried upon all of the several counts of the information at one and the same time. (*State v. Anderson*, supra; and *State v. Jones*, 202 Kan. 31, 446 P. 2d 851, and cases cited therein.)

In the case at bar the state's evidence concerning the forgery case established that on July 25, 1968, credit cards owned by Sadler were stolen from his automobile. On July 31 printed checks of Bessie Webb and a check protector were taken in the Rutherford burglary. On August 1, 1968, defendant at different times cashed two checks at the Grove IGA Store. The checks were drawn on the Bessie Webb check forms, payable to William D. Sadler. Defendant used Sadler's credit cards as identification in cashing the checks. Defendant was photographed while cashing the checks and was also identified by store employees. On August 5, 1968, defendant was arrested at Henry's Inc., while attempting to cash a

check in a manner similar to that used at the Grove IGA Store. None of the witnesses called by the state to establish the forgery and uttering offenses knew anything about the Faidley murder. The documentary and physical evidence pertaining to the forgery case was not in anyway related to, or connected with the evidence of the Faidley murder. The Rutherford burglary was established by Rutherford's testimony and circumstantial evidence.

The seven counts in the forgery case were clearly connected and the evidence was interrelated. Joinder of the seven counts in the forgery case was not only proper but necessary to prevent a bar of prosecution under K. S. A. 62-1449 [now 1970 Supp. 21-3108]. However, we fail to see how any of the forgery evidence would tend to prove or relate to the state's murder case, which was based on defendant's robbery of Faidley. There is no evidence that Faidley had anything to do with the forgeries or the Rutherford burglary. There is no showing that any of the forgery evidence was necessary to prove the murder charge.

Under the circumstances related, we believe consolidation of the two cases for trial over defendant's objection amounted to prejudicial error.

Testing the offenses consolidated here, against the standards referred to, it cannot be said that murder and forgery are of the same general character; nor is the same kind of punishment required. As we have already observed, the murder evidence was totally unrelated to the forgery evidence—the evidence establishing one offense was no proof of any element of the other offense. The murder evidence was largely circumstantial, while that of forgery was documentary and eyewitness testimony. Except for police officers, who investigated aspects of both cases, the witnesses were separate and distinct with respect to each case.

We find none of the guidelines for consolidation present in this case. This is not to say that all criteria must be present in order to join charges of two or more crimes in separate counts of one information or to consolidate informations for trial. Felonies, whether they be of the same or similar character, may be joined where the crimes charged are based on the same act or transaction, or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. (*State v. Brown,* 181 Kan. 375, 312 P. 2d 832, and cases cited therein.) If offenses of forgery and murder fall within any of these criteria, dissimilarity in character

of the two crimes, standing alone, would not bar joinder or consolidation thereof.

In the instant case the alleged acts of defendant in committing the burglary and forgeries are not shown to be connected in anyway with his alleged acts in committing the alleged robbery and murder of Faidley; nor is there any showing that the respective acts were any part of a common scheme or plan.

We call attention to the fact that what was essentially the prior case law in this jurisdiction, governing joinder of offenses in one information and consolidation for trial of separate informations, has now been codified in K. S. A. 1970 Supp. 22-3202 and 22-3203.

The state expresses fear that prosecution of the second case to be tried would be barred by the provisions of 62-1449, *supra.*

The subject matter of 62-1449 is clearly jeopardy. (*State v. McCarther,* 198 Kan. 48, 422 P. 2d 1012; and *State v. Momb,* 154 Kan. 435, 119 P. 2d 544.)

This court, in considering the statute [62-1449] in *State v. Momb,* supra, stated:

"There can be no doubt concerning the fact that the statute deals with jeopardy. It clearly was intended to supplement the existing law upon that subject in some manner. The title to the act clearly says so. . . ." (p. 440.)

In considering the import of 62-1449, in *McCarther* we said:

"Identity of offenses is universally declared to be an indispensable ingredient of jeopardy. (*State v. Ragan,* 123 Kan. 399, 256 Pac. 169; 22 C. J. S., Criminal Law, § 278 [1], pp. 713-719.) In *State v. Schmidt,* 92 Kan. 457, 140 Pac. 843, we said:

" '. . . In criminal cases the ultimate test applied in determining the validity of a plea of former conviction or former acquittal is identity of offenses. . . .' (p. 459.)" (p. 51.)

There is no showing here that the evidence in either case would identify any offense charged in the other. We believe the state is unduly alarmed concerning the effect of 62-1449, *supra.*

Even though the trial court's order of consolidation is said to be an abuse of discretion, defendant still has the burden of showing prejudice that requires a reversal. Defendant says that since his defense to the murder charge was that the shooting was accidental, he was compelled to take the witness stand to explain the circumstances. As a result, defendant states he was forced to admit the forgery and uttering charges (he denied any participation in the Rutherford burglary), and thus was put in the position of sub-

mitting, as an admitted forger, his defense of accidental shooting in the murder case. He claims this circumstance destroyed any possibility that the jury would give credence to his claim that the shooting of Faidley was accidental. Whether the jury would have believed defendant's description of the shooting, absent the influence of the forgery admissions by defendant, is not for us to decide. It must be conceded the jury may have been unduly influenced, particularly in the absence of any instruction in this regard.

We believe defendant has shown prejudice sufficient to require a new trial. Prejudice has consistently been held to occur when joinder or consolidation embarrasses or confounds an accused in making his defense. (*Pointer v. United States*, 151 U. S. 396, 38 L. Ed. 208, 14 S. Ct. 410; *McElroy v. United States*, 164 U. S. 76, 41 L. Ed. 355, 17 S. Ct. 31; *Gregory v. United States* [District of Columbia Circuit, 1966], 369 F 2d 185; *Cross v. United States* [District of Columbia Circuit, 1964], 335 F. 2d 987; *Meade v. State* [Fla. 1956], 85 So. 2d 613, 59 A. L. R. 2d 835.)

Defendant makes one further assignment of error which we believe should be considered.

In a pretrial motion, defendant requested funds for the hiring of a psychiatrist to examine defendant while under the influence of drugs. As previously noted, defendant's defense to the murder charge was that the shooting was accidental. The funds sought by defendant were not to be used for an examination to determine defendant's sanity, either at the time of the offense or at the time of trial. The examination was to be used in an attempt to corroborate defendant's story through the subconscious exploration of defendant's mind by psychiatric examination, while defendant was under the influence of drugs. In other words, it appears the purpose of defendant in seeking the funds was to hire an expert or experts to hear defendant's statement while under the influence of a drug, and then hopefully to come into court and testify that in their opinion defendant's story was true.

Defendant concedes that at the time of trial there was no specific statutory authorization to supply funds for the purpose intended. Nonetheless, defendant argues he was not afforded a due process fair trial under the principles enumerated in *Roberts v. LaVallee*, 389 U. S. 40, 19 L. Ed. 2d 41, 88 S. Ct. 194. Defendant further points out that funds for such purposes are now authorized under

the provisions of K. S. A. 1969 Supp. 62-3108 (now appearing as K. S. A. 1970 Supp. 22-4508).

Under our decision in the recent case of *State v. Chase,* 206 Kan. 352, 480 P. 2d 62, the evidence in the form of expert testimony, which defendant sought to procure by the use of the funds requested, would have been inadmissible for the purpose stated. Thus, defendant's indigency was a matter of no consequence. We find no abuse of discretion in the trial court's ruling.

The viewpoint of this court, in this regard, is in line with prevailing authorities. The general rule is stated in 29 Am. Jur. 2d, Evidence, § 831:

". . . Truth serum tests occupy much the same position as lie detector tests, and no court has as yet recognized the admissibility of the results of such tests, at least for the purpose of proving the truth of the matter asserted, . . ." (pp. 923, 924.)

Since new trials are necessary, we need not consider and pass upon other assignments of error.

The judgments are reversed with directions to grant separate trials.