No. 61,659

STATE OF KANSAS, *Appellee*, v. LORIE WALKER, *Appellant*.

(768 P.2d 290)

Opinion filed January 20, 1989.

*Shannon S. Crane*, assistant appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the brief for appellant.

*Mary Murguia*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Nick A. Tomasic*, district attorney, were with her on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Lorie A. Walker appeals her convictions of two counts of aggravated criminal sodomy (K.S.A. 1987 Supp. 21-3506[a]); two counts of endangering a child (K.S.A. 21-3608); and one count of making a terroristic threat (K.S.A. 1987 Supp. 21-3419[1][a]). She raises four issues in this appeal, none of which has merit. We affirm.

The victims in this sordid case were the two young stepsons of the appellant. Lorie A. Walker, the appellant, married Douglas Walker, Sr., in April 1986. He had been left a widower with two sons when his former wife died of Huntington's chorea, a genetic disorder. At the time of trial, B.W. was age 12 and D.W. was age 9. B.W., like his natural mother, suffers from Huntington's chorea. D.W. is hyperactive and requires regular medication to control his behavior. While the youngster's father worked during the daytime hours, their stepmother, Lorie, cared for them.

The family moved from Cedar Rapids, Iowa, to Kansas City, Kansas, in June 1986. In July 1986, Kansas City authorities were alerted by an Iowa social services agency that there was a possibility the children were being abused or neglected. Throughout the fall months, the boys' teachers, school social worker, and Department of Social and Rehabilitation Services (SRS) personnel became concerned that B.W. was being physically abused and that D.W. was not receiving regular medication to control his hyperactive behavior. In early December 1986, the police removed both boys from the family home after B.W., having suffered particularly severe blows to his face, told an SRS social worker and the police that his mother had struck him, apparently with a board.

On January 6, 1987, appellant was charged with one count of child abuse, K.S.A. 1987 Supp. 21-3609, for beating B.W. She was also charged in the same information with two counts of endangering a child, one count for each of her two stepsons.

While the two boys were in foster care, their behavior instigated an investigation into possible sexual abuse. The younger boy ultimately told an SRS child protection social worker that appellant had forced him and his brother B.W. to perform oral sex upon her while their father watched and encouraged them. Appellant later voluntarily admitted to a Wyandot Mental Health Center therapist that she had repeatedly forced the two boys to

perform oral sex on her. On March 6, 1987, an information was filed charging both appellant and Douglas Walker, Sr., with two counts of aggravated criminal sodomy.

B.W. was admitted to the child psychiatric unit at the University of Kansas Medical Center (KUMC) on January 6, 1987. The primary reason for his admission was that he had exhibited behavior problems while in foster care. His father and stepmother visited B.W. frequently, but on several occasions they were asked to leave because of their disruptive behavior. On March 3, 1987, the Walkers attended a meeting at KUMC regarding restrictions to be imposed on their visitations with B.W. The Walkers were informed that only Mr. Walker would be permitted to visit B.W. Appellant, angered because she was to be prohibited from visiting B.W. at KUMC, directed the following epithet to Florice Bales, the hospital social worker: "You are a fucking dead bitch; I'm-I'm going to find your house and blow it up." Appellant then walked out of the meeting. Mr. Walker thereafter made threatening statements to Dr. Kristopher Wendler, who was also in the room during the meeting. On March 19, 1987, both appellant and Douglas Walker, Sr., were charged with two counts of making a terroristic threat, naming Ms. Bales and Dr. Wendler as the victims.

Douglas Walker, Sr., testified for the State at appellant's trial, having apparently decided to enter a plea. Appellant was found guilty by a jury of two counts of aggravated criminal sodomy, two counts of endangering a child, and one count of terroristic threat. The jury was unable to reach a unanimous verdict on the charge of abusing B.W. A mistrial was declared as to that charge, and the charge was dismissed. The appellant was acquitted of the charge of making a terroristic threat to Dr. Wendler. Additional facts will be set forth as they become pertinent to the various issues asserted in this appeal.

Appellant, for her first issue, asserts it was error to consolidate the trial of the two counts of making a terroristic threat with the trial of the charges in the other two informations. K.S.A. 22-3203 provides:

"**Consolidation for trial of separate indictments or informations.** The court may order two or more complaints, informations, or indictments against a single defendant to be tried together if the crimes could have been joined in a single complaint, information or indictment."

The rule on joinder of charges is stated in K.S.A. 22-3202(1), which reads:

"*Two or more crimes may be charged against a defendant in the same complaint, information or indictment* in a separate count for each crime *if the crimes charged,* whether felonies or misdemeanors or both, are of the same or similar character or *are based* on the same act or transaction or *on two or more acts or transactions connected together* or constituting parts of a common scheme or plan." (Emphasis added.)

Whether a defendant may be tried on two or more complaints, informations, or indictments in a single trial rests in the sound discretion of the trial court, within the guidelines established in statute and case law, and its holding will not be disturbed on appeal absent a clear showing of abuse of discretion. *State v. Breazeale,* 238 Kan. 714, 729, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986); *State v. Boan,* 235 Kan. 800, 806, 686 P.2d 160 (1984); *State v. Bagby,* 231 Kan. 176, 178, 642 P.2d 993 (1982); *State v. Adams,* 218 Kan. 495, 506, 545 P.2d 1134 (1976), and cases cited therein. Even if the trial court's consolidation order is determined to be an abuse of discretion, the defendant has the burden of showing prejudice requiring reversal. *State v. Thomas,* 206 Kan. 603, 609, 481 P.2d 964 (1971).

While it is true that the charges of terroristic threat are not of the same or similar character or based upon the same acts or transactions as the other charges against appellant, the State does not rely upon those criteria of the statute. Instead, the State asserts that the terroristic threat charges are "acts or transactions connected together" with the charges of aggravated criminal sodomy, child abuse, and endangering a child. If the acts are connected together, the dissimilarity of the crimes, standing alone, does not bar consolidation. *State v. Thomas,* 206 Kan. at 608-09.

For support of its argument, the State relies primarily on *State v. Pondexter,* 234 Kan. 208, 671 P.2d 539 (1983), and *State v. Moore,* 226 Kan. 747, 602 P.2d 1359 (1979).

In *Moore,* the defendant was initially charged with aggravated robbery and kidnapping. In the original trial, the jury was unable to reach a verdict and the case ended in a mistrial. Shortly thereafter, the defendant was charged with corruptly influencing a witness and unlawful deprivation of property. The second charge essentially alleged that Moore had solicited a third party to testify falsely in a way that would have presumably assisted in

his defense on the original charge of aggravated robbery and kidnapping, and that Moore unlawfully deprived the third party of his property when he changed his mind and refused to testify on Moore's behalf. Moore was subsequently tried on both complaints and convicted in a consolidated trial. This court reasoned:

"K.S.A. 22-3202 and K.S.A. 22-3203 correspond to Rules 8(a) and 13 of the Federal Rules of Criminal Procedure. The federal cases consistently hold that when criminal conduct resulting in a second charge is precipitated by a previous charge, the two are considered sufficiently 'connected together' to allow consolidation for trial. For example, 'a charge of bail jumping or escape may be deemed sufficiently "connected" with a substantive offense to permit a single trial, at least where the charges are related in time, the motive for flight was avoidance of prosecution, and appellant's custody stemmed directly from the substantive charges.' *United States v. Ritch,* 583 F.2d 1179, 1181 (1st Cir.), *cert. denied* 439 U.S. 970 (1978). Similar results were reached in *United States v. Bourassa,* 411 F.2d 69, 74 (10th Cir. [Kan.] 1969); *United States v. Quinones,* 516 F.2d 1309 (1st Cir.), *cert. denied* 423 U.S. 852 (1975). In *Williams v. United States,* 265 F.2d 214 (9th Cir. 1959), it was held that a charge of obstruction of justice was properly joined for trial with a charge of statutory rape when the obstruction charge was the result of the defendant's persuasion of the victim in the statutory rape charge to repudiate her earlier statement of intercourse with defendant. Applying the reasoning of the federal cases to the factual circumstances in this case, we hold that the two criminal cases against the defendant Moore were properly consolidated for trial under the Kansas statutes. The crimes of aggravated robbery and kidnapping were 'connected together' with the charge of corruptly influencing a witness because the crime charged in 78 CR 629 precipitated the conduct charged in 78 CR 1659." *State v. Moore,* 226 Kan. at 749-50.

In *Pondexter,* the court quoted at length from *Moore* and then reasoned:

"The case at bar is factually similar to the situation in *Moore.* Here the evidence presented by the State indicates the appellant wanted to kill Mullikin to prevent him from testifying at his trial for unlawful possession of a firearm and aggravated assault on a law enforcement officer. Clearly the crimes charged in the earlier action precipitated the conduct resulting in the attempted murder and burglary charges. The charges arising out of the two incidents were properly consolidated for trial." 234 Kan. at 217.

While the charges in *Moore* and *Pondexter* were, perhaps, more directly connected together, the charges of terroristic threat in the present case resulted from the original charges of child abuse and endangering a child. The earlier charges precipitated the factual setting which led appellant to make the threat against Ms. Bales. Even if the separate charges were not sufficiently connected together to warrant consolidation, as appellant con-

tends, she must also demonstrate prejudice which would justify reversal. In the present case the evidence was overwhelming on the most serious charges. The fact that the jury found the appellant not guilty on one of the terroristic threat counts and could not agree on one count of child abuse indicates that the jury carefully considered the evidence and each separate charge. No showing of prejudice in consolidating the three informations has been shown, and we find no abuse of discretion by the trial court.

The second issue is whether two remarks made by the prosecuting attorney during closing argument were so prejudicial as to require reversal of appellant's convictions. The appellant concedes that no objection was made at trial to the prosecutor's closing argument. Nor did appellant's counsel request that the trial court admonish the jury to disregard the challenged statements. Furthermore, the issue was not raised in the defendant's motion seeking a new trial. This court has repeatedly held that reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument where no objection was lodged. *State v. McDaniel & Owens,* 228 Kan. 172, 179, 612 P.2d 1231 (1980); *State v. Cunningham,* 222 Kan. 704, 707, 567 P.2d 879 (1977); *State v. Ralls,* 213 Kan. 249, 250, 515 P.2d 1205 (1973). No reversible error has been shown.

For the third issue on appeal the appellant contends there was insufficient evidence to support her convictions of two counts of endangering a child. K.S.A. 21-3608(1)(b) provides:

"(1) Endangering a child is willfully:

. . . .

"(b) Unreasonably causing or permitting a child under the age of eighteen (18) years to be placed in a situation in which its life, body or health may be injured or endangered."

In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court considers only the evidence in favor of the verdict to determine whether the essential elements of a charge are sustained. *State v. Dunn,* 243 Kan. 414, 429, 758 P.2d 718 (1988).

Appellant first argues that there was no evidence of wilfullness or unreasonableness, asserting that, as a stepparent, she had no

legal duty to care for the children. This argument has no merit. The statute does not require the State to prove that the offender had any independent legal duty to the victim, but only that the conduct was wilful and unreasonable. The appellant was the stepmother of the two boys and their daytime caretaker. It was the jury's duty to determine whether the appellant's conduct toward her stepsons violated the statute, given her relationship to them.

Appellant also argues that there was insufficient evidence to show that she placed the children in a potentially dangerous situation or to show that the life, body, or health of either child may have been endangered. The State, in its brief, summarizes the evidence as follows:

"[B.W.], age twelve, suffered beatings from his stepmother, Lorie Walker, since June of 1986. He received black eyes, bruising on his forehead, swelling on the bridge of his nose and a cut lip from Lorie Walker, which was noticed and reported by his school social worker on December 9, 1986. Lorie Walker struck [B.W.] in the face several times with her fist because he wasn't paying attention on December 7, 1986, at their residence on Tremont.

"According to the Social [and] Rehabilitation Services workers and school personnel, both [stepchildren] were denied necessary medical treatment and medication for their respective medical problems from September 1986 until December 1986. [B.W.] suffers from a terminal disease called Huntington's Chorea. Lorie Walker was aware of the severity of [his] illness and was with him in Cedar Rapids, Iowa, when he was diagnosed. Lorie Walker also knew [D.W.], age nine, suffers from hyperactivity and has a fifty-fifty chance of later contracting Huntington's Chorea. Both children require daily dosages of medication and treatment from a doctor on a regular basis. Without such attention and treatment the condition of both children significantly deteriorates. Dr. K. Wendler testified that [B.W.'s] failure to receive medication or receiving it inconsistently directly affected the quality of [his] life. Mary Kate Beckham, [D.W.'s] school teacher, testified that [he] was completely uncontrollable without his medication. She readily noted the change in his behavior when he received it; and, that she finally tried to go through Children's Mercy Hospital directly on her own to get the necessary drugs for [him]. Lorie Walker refused to seek treatment for the children or administer medication, even after efforts from Social [and] Rehabilitation Services and school personnel to get her to do so.

"Both [children] went to school in cold weather without coats, jackets, or even a sweater. Their clothes were often described as filthy. Both children were always unusually hungry.

"The condition of the Walker home located on North Tremont was deplorable. The school social worker testified that on every occasion she went to the Walker home, she noted a terrible odor. There was always dirty clothing everywhere and on one day there was an injured dog laying in the living room. . . .

"Upon making the child abuse and endangerment reports to the police, both

children were taken to Bethany Medical Center and placed in foster care. While in Social and Rehabilitation Services custody, [D.W.] revealed to Clark Marquez of Social and Rehabilitation Services and Detective W. K. Smith that Lorie Walker, his stepmother, abused him and his brother, [B.W.], sexually. Lorie Walker forced the boys to perform oral sex on her as their 'treats' for good behavior or as 'punishment' for bad behavior."

While the evidence on the charges of endangering a child may not have been overwhelming, we cannot say under our standard of review that it was insufficient to support the charges.

The fourth and final issue is whether K.S.A. 21-3608(1)(b) is unconstitutionally vague and indefinite for failing to adequately convey the class of persons subject to criminal liability for endangering a child. The record does not reflect that this issue was ever raised before the trial court. Where constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review. *State v. Johnson*, 240 Kan. 326, 332, 729 P.2d 1169 (1986).

The judgment is affirmed.