No. 62,083

STATE OF KANSAS, *Appellee,* v. JOHN E. GOSS, *Appellant.*

(777 P.2d 781)

Opinion filed July 14, 1989.

*Linda L. Eckelman,* of Dodge City, argued the cause and was on the brief for appellant.

*Joe Shepack,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: John E. Goss appeals his jury trial convictions of first-degree murder (K.S.A. 21-3401) and unlawful possession of a firearm (K.S.A. 21-4204).

Janice Amerin resided with her parents near Plains. On September 8, 1986, as Janice was preparing to leave for work, defendant appeared at the residence. He and Janice had dated sporadically. Shirletta Amerin, Janice's mother, heard her daughter screaming in the garage. She rushed to the scene and saw Janice and defendant struggling. Defendant forced Janice into her automobile. As defendant was attempting to start the vehicle, Janice broke away and started running for the house. Defendant fired two shots at her before Janice ran inside the home. Defendant followed and Shirletta heard more shots. Defendant then returned to the garage and drove away in Janice's car.

Shirletta ran into the house and found her daughter standing in the kitchen. Janice told her she had been shot by defendant. An ambulance was called but Janice died before it arrived. An autopsy revealed Janice had been shot three times. On his way to the Amerin home, the Meade County Sheriff saw Janice's car in a ditch, with footprints from the vehicle pointing north into a milo field. A fruitless manhunt was organized. On September 22, 1986, defendant was arrested in Tyrone, Oklahoma. Additional

facts will be stated as necessary to the discussion of particular points.

## SPEEDY TRIAL

A number of issues are raised relative to alleged violations of defendant's statutory and constitutional rights to a speedy trial. For convenience, these will be discussed as subsections of one issue.

K.S.A. 22-3402 provides, in pertinent part:

"(1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3).

. . . .

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

(a) The defendant is incompetent to stand trial;

(b) A proceeding to determine the defendant's competency to stand trial is pending and a determination thereof may not be completed within the time limitations fixed for trial by this section . . . ."

Defendant was arraigned on February 27, 1987, on the information on which he was ultimately tried. His jury trial commenced on October 14, 1987. On March 6, 1987, defendant, who was in jail on the charges herein, was served with a second criminal warrant involving unrelated burglary and theft charges (case No. 87 CR 41). Thus, defendant was held in jail solely on the case before us approximately one week between his arraignment and trial. Accordingly, he does not meet the requirement of K.S.A. 22-3402(1) of being "held in jail solely by reason thereof." Whereas this fact disposes of this point, it should be noted that defendant, on March 26, 1987, sought a continuance on the basis of an insanity defense and abandoned this defense on September 10, 1987. The period in between was consumed by matters pertaining to this defense and chargeable to defendant for purposes of computation of time under K.S.A. 22-3402.

The next claim under this issue is whether pre-arraignment time should be tacked onto post-arraignment time in computing the 90-day period. Defendant was arrested on September 22, 1986, on a charge of second-degree murder (case No. 86 CR 64). On September 24, 1986, the complaint was amended to include additional counts, including felony murder. On November 5,

1986, a preliminary hearing commenced and defendant was bound over on, *inter alia*, felony murder. Arraignment was set for November 21, 1986. This was continued at defendant's request. On November 25, 1986, a second amended complaint was filed charging premeditated first-degree murder. Defendant was never arraigned on case No. 86 CR 64, and it was ultimately dismissed on January 5, 1987. Meanwhile, the case before us (case No. 86 CR 95) was filed on December 22, 1986.

In order to exceed the 90-day limit, one would have to tack on a major portion of the time defendant was being held in the prior case. We have tacked on such time only under exceptional circumstances where it is obvious that a dismissal and refiling was clearly a subterfuge engaged in by the State to avoid dismissal under the speedy trial statute. In *State v. Cuezze, Houston & Faltico*, 225 Kan. 274, 278, 589 P.2d 626 (1979), two of the defendants were arraigned in the first case and shortly before the statutory speedy trial period would have expired, these charges were dismissed and a virtually identical complaint was filed. We held that the State cannot dismiss and refile charges solely to set the statutory clock back to zero. To hold otherwise, we reasoned, would defeat the purpose of the statute. Dismissals and refilings when the statutory period is about to expire are suspect and a showing of necessity must be made.

In the case before us, the 90-day clock in the prior case did not commence to run, as there was no arraignment therein. The State had considerable difficulty in deciding on what charges it desired to proceed, but the element of subterfuge to avoid the statute is wholly lacking herein. There is no reason to utilize the extraordinary remedy of tacking together the times involved in both cases, as was done in *Cuezze*.

Defendant next argues his right to a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution, has been violated.

The leading United States Supreme Court case on the right to speedy trial is *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). In *Barker*, more than five years elapsed between defendant's arrest and trial. The United States Supreme Court adopted a case-by-case flexible approach for determining whether an accused's constitutional right to a speedy trial had been violated, stating:

"A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530.

Less than five months after *Barker*, we adopted the *Barker* four-point analysis in *State v. Otero*, 210 Kan. 530, 502 P.2d 763 (1972). In *Otero* there was more than an eight-year delay between charges being filed and trial. The court found this delay violated defendant's right to a speedy trial and reversed his conviction.

The length of delay herein—a little over a year between arrest and trial—is not clearly presumptively prejudicial as enunciated by *Barker v. Wingo*, and hence there is no necessity for inquiry into the other factors that go into the balancing test.

For his final point in this area, defendant contends that his right to due process as guaranteed by the Sixth Amendment to the United States Constitution has been violated by his failure to receive a speedy trial. This point is unclear, but defendant appears to be contending that the trial court's failure to find his statutory and constitutional rights to a speedy trial had been violated constitutes a violation of his right to due process as guaranteed by the Sixth Amendment to the United States Constitution.

This is a novel argument not only in jurisprudence but in this case itself, as it is presented for the first time on appeal. When constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review. *State v. Walker*, 244 Kan. 275, Syl. ¶ 6, 768 P.2d 290 (1989). The point is not properly before us, and is, in any event, of no merit.

## CHANGE OF VENUE

For his next issue, defendant contends the trial court erred in refusing to grant his motion for a change of venue. He argues that the victim and her family were well known and respected in the small community of Plains and that feelings were so high against defendant in Meade County as a result of media publicity that a fair trial could not be held therein.

K.S.A. 22-2616(1) provides:

"In any prosecution, the court upon motion of the defendant shall order that the case be transferred as to him to another county or district if the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

The principles underlying a motion for a change of venue were recently reviewed in *State v. Ruebke*, 240 Kan. 493, Syl. ¶¶ 1-3, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987), where we said:

"The determination of whether to change venue lies within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of prejudice to the substantial rights of the defendant, with the burden upon the defendant to show prejudice in the community, not as a matter of speculation, but as a demonstrable reality. *State v. Haislip*, 237 Kan. 461, 701 P.2d 909 (1985)." Syl. ¶ 2.

"The defendant must show that such prejudice exists in the community that it was reasonably certain he could not have obtained a fair trial. There must be more than speculation that the defendant did not receive a fair trial. The State is not required to produce evidence refuting that of the defendant. *State v. Sanders*, 223 Kan. 273, 280, 574 P.2d 559 (1977)." Syl. ¶ 3.

"Media publicity alone has never established prejudice per se." Syl. ¶ 1.

In *Ruebke*, which involved the murder of a babysitter and her twin two-year-old charges, and a concomitant deluge of publicity, we discussed factors which courts considered in determining whether a particular community atmosphere was conducive to a fair and impartial trial, as follows:

"Indicative of whether the atmosphere is such that a defendant's right to a fair and impartial trial would be jeopardized, courts have looked at such factors as the particular degree to which the publicity circulated throughout the community; the degree to which the publicity or that of a like nature circulated in other areas to which venue could be changed; the length of time which elapsed from the dissemination of the publicity to the date of trial; the care exercised and the ease encountered in the selection of the jury; the familiarity with the publicity complained of and its resultant effect, if any, upon the prospective jurors or the trial jurors; the challenges exercised by the defendant in the selection of a jury, both those peremptory and those for cause; the connection of government officials with the release of the publicity; the severity of the offense charged; and the particular size of the area from which the venire is drawn. Annot., 33 A.L.R.3d 17, § 2(a)." 240 Kan. at 499-500.

As a part of the September 11, 1987, pretrial herein, nine names were selected at random from a telephone book and subpoenaed to appear. These were considered to be a random sampling of prospective jurors, and inquiry was made of them as

to their abilities to be fair and impartial jurors in a trial of defendant. Five of the nine clearly passed the test.

At trial, the court was generous with excusing jurors for cause, but, even so, a jury was selected in less than a day. Defendant passed the remaining prospective jurors for cause. We find no error or abuse of discretion in the trial court's denial of defendant's motion to change venue.

## COUNTY ATTORNEY AS A WITNESS

For his next issue, defendant claims the district court erred in refusing to permit him to call the county attorney as a witness.

Joe Shepack was the Meade County Attorney at all times pertinent. He prosecuted the case. One of the witnesses called by the State was Collethea Suiter, who testified defendant had threatened to kill the victim a few days before the victim's death. Defendant sought to call Shepack as a witness to testify concerning his opinion of Suiter's veracity. In an in-chambers proceeding to disqualify Suiter as a witness, Shepack had testified he had "a low opinion of her reputation for truthfulness." .

The trial court refused to permit Shepack to testify, ruling that: (1) the procedure would "be disruptive to the administration of justice"; and (2) there was no showing other witnesses who could also testify as to Mrs. Suiter's truthfulness were unavailable. The trial court's belief that such testimony would be disruptive of the trial is certainly understandable. To call the prosecutor of a case to testify as to the veracity of a witness would likely result in a mistrial.

In *State v. Gammill*, 2 Kan. App. 2d 627, 585 P.2d 1074 (1978), the Court of Appeals held it was reversible error for a county attorney to make remarks in closing argument which had the effect of stamping his imprimatur on the testimony of certain witnesses. The court said:

"The state's attorney also made remarks which were tantamount to his endorsing the credibility of certain witnesses. This leaves the jury with the impression that the prosecutor has knowledge other than what was presented to them. Vouching for the credibility of witnesses is reversible error. *State v. Majors*, 182 Kan. 644, 323 P.2d 917 (1958); *United States v. Ludwig*, 508 F.2d 140 (10th Cir. 1974)." 2 Kan. App. 2d at 632.

Former Meade County Sheriff Arlie Johnson was called as a defense witness and he testified as to Suiter's poor reputation for veracity.

We find no error or abuse of discretion in this issue.

FAILURE TO COMPEL ATTENDANCE OF A WITNESS

For his next issue, defendant contends the trial court erred in refusing to compel the attendance of Lisa Hatfield.

Lisa Hatfield was one of the residents in the trailer in Tyrone, Oklahoma, where defendant was arrested on September 22, 1986. Another resident, Troy Pennington, testified defendant confessed he had shot Janice Amerin. A subpoena was issued for Ms. Hatfield's appearance at the February 1987 preliminary hearing. It was directed to Liberal where Ms. Hatfield was said to be employed. She could not be located. Her existence as a possible witness was known to defendant at least as early as the preliminary hearing. Defense counsel waited until the third day of trial to seek assistance from the court in compelling the witness to appear.

Section 10 of the Bill of Rights to the Kansas Constitution provides:

"In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance of the witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense."

Defendant's entire argument on this point is as follows:

"It is the contention of the defendant that the trial court erred in not aiding the defendant with the attendance of witness, Lisa Hatfield. It was believed that the witness was out-of-state and the defense was powerless to subpoena an out-of-state witness. K.S.A. 22-3411 providing the defense the right to take a deposition of an out-of-state witness might have been applicable if the defendant were provided the information by the State to locate the witness."

Defense counsel wanted the district court to put the in-progress jury trial on indefinite hold while Oklahoma would be processing the Kansas request for Hatfield's attendance. Defendant could have taken Hatfield's deposition under K.S.A. 22-3211(1) as the trial court proposed. Defendant declined to pursue this avenue. No proffer of what the witness would have testified to is before us.

We find no error or abuse of discretion in this issue.

FAILURE TO COMPLY WITH PRODUCTION ORDER

Defendant contends that he was denied access to a statement

of witness Suiter until the time of trial. The record reveals that defense counsel admits she had access to the statement soon after the February 1987 preliminary hearing. This issue is wholly specious.

## FAILURE TO DISQUALIFY TRIAL JUDGE

For his final issue, defendant contends Administrative Judge Don C. Smith erred in denying his motion to disqualify Judge Reynolds as the trial judge herein.

K.S.A. 20-311d provides, in pertinent part:

"(a) If a party or a party's attorney believes that the judge to whom an action is assigned cannot afford that party a fair trial in the action, the party or attorney may file a motion for change of judge. The motion shall not state the grounds for the party's or attorney's belief. The judge shall promptly hear the motion informally upon reasonable notice to all parties who have appeared in the case. If the judge disqualifies the judge's self, the action shall be assigned to another judge by the administrative judge. If the judge refuses to disqualify the judge's self, the party seeking a change of judge may file the affidavit provided for in subsection (b). If an affidavit is to be filed it shall be filed forthwith.

"(b) If a party or a party's attorney files an affidavit alleging any of the grounds specified in subsection (c), the administrative judge shall at once determine, or refer the affidavit to another district judge for prompt determination of, the legal sufficiency of the affidavit. If the affidavit is filed in a district court in which there is no other judge who is qualified to hear the matter, the administrative judge shall at once notify the departmental justice for the district and request the appointment of another district judge to determine the legal sufficiency of the affidavit. If the affidavit is found to be legally sufficient, the case shall be assigned to another judge.

"(c) Grounds which may be alleged as provided in subsection (b) for change of judge are that:

. . . .

"(5) The party or the party's attorney filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post-judgment remedies. Such affidavit shall state the facts and the reasons for the belief that bias, prejudice or an interest exists."

The affidavit must contain facts and reasons which give fair support for the belief that, on account of the bias or prejudice of the judge, the affiant cannot obtain a fair trial. *State v. Ruebke,* 240 Kan. at 501; *Hulme v. Woleslagel,* 208 Kan. 385, 392, 493 P.2d 541 (1972).

In his affidavit to the court, the defendant stated that widespread publicity, coupled with the fact the trial judge herein had modified defendant's sentence and placed him on probation August 28, 1986, (10 days before Janice Amerin's death) resulted

in the distribution of campaign literature by then-candidate for governor, Mike Hayden, which could have placed pressure upon the trial judge to handle the defendant's case unfairly. One piece of political literature appended to defendant's affidavit described Judge Reynolds as a "district judge following the Carlin-Docking guidelines on criminal-coddling" by turning the defendant loose on probation. Defendant was described therein as a "walking time-bomb." The quoted descriptions were attributed to candidate Hayden.

The motion was acted upon, pursuant to K.S.A. 20-311d(b), by Administrative Judge Don C. Smith, who denied the motion, explaining that the allegations did not state facts and reasons sufficient to sustain any belief that the trial judge was biased or prejudiced. We agree. The allegations contained in defendant's affidavit are speculations only and do not reach the threshold of facts and reasons necessary to sustain the motion. The court did not err in denying the motion.

The judgment is affirmed.