NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

## THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2015-0683

THE STATE OF NEW HAMPSHIRE

v.

PEGGY STARR

Argued: March 30, 2017
Opinion Issued: June 9, 2017

Joseph A. Foster, attorney general (Stephen D. Fuller, senior assistant attorney general, on the memorandum of law and orally), for the State.

DeMoura|Smith LLP, of Portsmouth (Kirsten B. Wilson on the brief and orally), for the defendant.

HICKS, J. The defendant, Peggy Starr, appeals her conviction, following a bench trial in Superior Court (Houran, J.), on one count of second degree assault, as a lesser included offense of first degree assault. See RSA 631:1, I(d), :2, I(d) (2016). She argues that the trial court erred by denying her motion to dismiss the first degree assault indictment. We affirm.

The trial court found or could have found the following facts. In 2010, at six and one-half years of age, D.A. was hospitalized at a weight of just 23.4 pounds. At the time of his hospitalization, he suffered developmental delays, was failing to gain weight, and was short for his age. Ultimately, D.A. was diagnosed with failure to thrive due to malnutrition and psychosocial dwarfism.

Before his hospitalization, D.A. had been in the care of the defendant and her daughter, Christina Thomas. D.A. called the defendant "grandma," and she treated him as her grandchild. Although D.A.'s biological mother also lived in Thomas's home with D.A., the defendant and Thomas were D.A.'s "primary caregivers" and made decisions about his care. The defendant took D.A. to medical appointments with his primary care physician and with specialists. She also communicated with D.A.'s school about his education, and she attended individualized education plan meetings on his behalf.

While D.A. was in the defendant's care, she disciplined him by slapping him and hitting him with a spatula. In addition to administering physical discipline, she would control his eating to modify his behavior. She took food away from him to punish him even after one of his treatment providers instructed that she not do so. Although the defendant knew that D.A. was not growing taller, was not gaining weight, and was developmentally delayed, she told authorities at D.A.'s school that he was not to be given an extra lunch if he ate his packed lunch on the way to school, and she continued to withhold food from him as punishment.

Within ten months of D.A.'s removal from the care of the defendant and Thomas, his weight nearly doubled. The defendant was charged with first degree assault for knowingly causing serious bodily injury to D.A. by causing his "failure to thrive" condition by failing to provide him with proper nutrition. See RSA 631:1, I(d).

The defendant moved to dismiss the indictment, arguing that the first degree assault statute does not impose criminal liability upon defendants for omissions. The trial court denied the motion, ruling that "first degree assault as charged in this case may be established by conduct constituting a voluntary act or a voluntary omission."

The defendant argues that the indictment should have been dismissed because the State's theory was that the defendant caused serious bodily injury to D.A. by failing to act, and the first degree assault statute does not delineate those who have a duty to act. She contends that RSA 631:1, I(d) "cannot be construed to result in criminal liability for omissions rather than actions" because it does not set forth the duty of care that, when breached, gives rise to criminal liability.

We note that the defendant does not argue that she owed no duty of care to D.A. Therefore, the only issues presented for our review are: (1) whether RSA 631:1, I(d) criminalizes knowing or reckless omissions that result in serious bodily injury to a person under 13 years of age; and (2) whether the statute must explicitly set forth any duty that, if breached by a failure to act, gives rise to criminal liability.

Resolving the issues in this appeal requires us to engage in statutory interpretation. We review matters of statutory interpretation de novo. State v. Fuller, 169 N.H. 154, 157 (2016). To determine a statute's meaning, we first examine its language, and ascribe the plain and ordinary meaning to the words used. Id. at 157-58. We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language that the legislature did not see fit to include. Id. at 158. We interpret a statute in the context of the overall statutory scheme and not in isolation. Id. We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. Id. We construe the provisions of the Criminal Code "according to the fair import of their terms and to promote justice." RSA 625:3 (2016).

RSA 631:1, I(d) provides, in relevant part, that "[a] person is guilty of a class A felony if he . . . [k]nowingly or recklessly causes serious bodily injury to a person under 13 years of age." "It is a matter of fundamental criminal law that '[a] person is not guilty of an offense unless his criminal liability is based on conduct that includes a voluntary act or the voluntary omission to perform an act of which he is physically capable.'" State v. Fortier, 146 N.H. 784, 797 (2001) (quoting RSA 626:1, I (2016)) (emphasis added). In the Criminal Code, "[c]onduct" is defined as "an action or omission, and its accompanying state of mind, or, a series of acts or omissions." RSA 625:11, I (2016) (emphasis added). Thus, the language of RSA 631:1, I(d), by its plain and ordinary meaning and interpreted in the context of the overall statutory scheme, see Fuller, 169 N.H. at 157-58, criminalizes both acts and omissions that cause serious bodily injury to a person under 13 years of age.

In support of her argument that RSA 631:1, I(d) does not criminalize omissions, the defendant cites RSA 631:8 (Supp. 2016) and RSA 639:3 (Supp. 2016). She contends that, if RSA 631:1, I(d) criminalizes omissions, then RSA 631:8, which criminalizes the neglect of elderly, disabled, or impaired adults, and RSA 639:3, which criminalizes endangering the welfare of a child or an "incompetent" person, are redundant because the legislature set forth specific omissions in those statutes that give rise to criminal liability. We are not persuaded. The fact that an act or omission may violate more than one criminal statute does not invalidate any one of the criminal statutes. See State v. Peck, 140 N.H. 333, 334 (1995) ("[W]hen an act violates more than one

3

criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." (quotation omitted)).

The defendant also argues that, by the plain language of the statute, "assault" necessarily requires a positive action. The Criminal Code, however, explicitly defines "assault" as, among other things, "[k]nowingly or recklessly caus[ing] serious bodily injury to a person under 13 years of age." RSA 631:1, I(d). Nothing in the statutory definition requires that the causal action be an affirmative action rather than an omission, and nothing in RSA 631:1, I(d) negates the general principle that a person may be held criminally liable for omissions. See RSA 625:11, I; RSA 626:1, I.

For the foregoing reasons, we reject the defendant's interpretation of RSA 631:1, I(d) as limiting criminal liability to affirmative actions. We next turn to the defendant's argument that, in order for the statute to criminalize omissions, it must explicitly set forth a duty of care that, when breached, gives rise to criminal liability. The State and the defendant agree that an omission gives rise to criminal liability under RSA 631:1, I(d) only if the allegedly culpable individual owes a duty of care to the person under 13 years of age. But see State v. Walker, 768 P.2d 290, 294-95 (Kan. 1989) (rejecting defendant's argument for reversal on the grounds that she had no legal duty to care for the victims because "[t]he statute does not require the State to prove that the offender had any independent legal duty to the victim, but only that the conduct was wilful and unreasonable"). For the purposes of this appeal, we assume, without deciding, that the parties are correct. We also assume, without deciding, that RSA 631:1, I(d) does not set forth a duty of care.

Whether a statute must explicitly set forth a duty of care that, if breached, gives rise to criminal liability, is an issue of first impression for this court. We, therefore, look to other jurisdictions for guidance. State v. Kelly, 159 N.H. 390, 392 (2009). We agree with the weight of authority that a criminal statute need not explicitly state the duty of care that gives rise to criminal liability when breached by a failure to act. See, e.g., Sickel v. State, 363 P.3d 115, 117 (Alaska Ct. App. 2015) ("It is true that the cruelty to animals statute fails to specify which persons have a duty to care for particular animals. But we are authorized to look to the common law to remedy this omission."); see also 1 Wayne R. LaFave, Substantive Criminal Law § 6.2(a), at 436 (2d ed. 2003).

The Model Penal Code, from which our Criminal Code is largely derived, State v. Donohue, 150 N.H. 180, 183 (2003), makes clear that criminal liability for an omission may be imposed even if the criminal statute does not explicitly set forth the duty of care, Model Penal Code and Commentaries § 2.01(3)(b), at 213 (1985). RSA 626:1, I, which provides that criminal liability must be based on conduct that includes a voluntary act or a voluntary omission, is identical

4

to the main section of the Model Penal Code's voluntary act provision.  See Model Penal Code and Commentaries, supra § 2.01(1), at 212.  We have previously explained that the similarity between the operative language in subsection 2.01(1) and RSA 626:1, I, indicates that they share a common meaning.  State v. Daoud, 141 N.H. 142, 145 (1996).  Thus, the Model Penal Code supports our interpretation of RSA 631:1, I(d).

Our decision in State v. Akers, 119 N.H. 161, 162-63 (1979), does not foreclose our conclusion that a criminal statute need not explicitly state the duty of care that gives rise to criminal liability when breached.  In Akers, we held that a statute that criminalized the status of parenthood was unconstitutional because it did not specify any conduct — any "voluntary acts or omissions" — that gave rise to parents' criminal liability.  Id. at 161, 163.  Instead, the statute in that case based liability solely on parents' status as parents.  Id. at 162-63.  This, we concluded, was contrary to Part I, Article 15 of the State Constitution and RSA 626:1.  Id. at 162-63.  By contrast, RSA 631:1, I(d), does specify the conduct that gives rise to criminal liability: knowing or reckless voluntary acts or omissions that cause serious bodily injury to a person under 13 years of age.  See RSA 625:11, I; RSA 626:1, I; RSA 631:1, I(d).

For the purposes of this appeal, we need not determine the source of the duty of care that the defendant owed D.A. because she does not dispute that she did owe him such a duty.  Therefore, we affirm the trial court's order denying the defendant's motion to dismiss.  To the extent that the defendant argues that RSA 631:1, I(d) is unconstitutionally vague, we conclude that the argument was not raised before the trial court and is insufficiently developed to warrant review.  See State v. Blackmer, 149 N.H. 47, 48-49 (2003) (confining our review to only those issues that the defendant had raised in the trial court and that the defendant had fully briefed).

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.