NOT DESIGNATED FOR PUBLICATION

No. 116,525

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON CHRISTOPHER PEREZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed August 31, 2018. Affirmed in part, vacated in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, special prosecutor, *Darrin C. Devinney*, county attorney, and *Derek Schdmit*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and HILL, JJ.

PER CURIAM: A jury convicted Jason Christopher Perez of 11 crimes, including 3 counts of attempted first-degree murder. Perez appeals those convictions, raising four arguments on appeal. First, he argues that two of his three counts of attempted first-degree murder are multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Second, he argues that his absence from certain continuance hearings violated his right to be present during critical stages of his defense under the Sixth Amendment to the United States Constitution. Third, he argues

1

that the State violated his statutory right to a speedy trial under K.S.A. 2017 Supp. 22-3402. Fourth, he argues that the State violated his constitutional speedy trial right under the Sixth Amendment. Of these four issues, we find merit in only Perez' multiplicity argument. We therefore vacate the sentence imposed below for count two—Perez' attempted first-degree murder of Deputy Lucas Powell as an aider and abettor—and remand for resentencing. As a result, we affirm in part, vacate in part, and remand with directions.

*The Crimes*

The parties do not dispute the facts leading up to Perez' prosecution in Sedgwick County case No. 15 CR 0142 on appeal. On March 11, 2013, around 6:15 p.m., Sedgwick County Sheriff's Deputy Lucas Powell was near the 125th Street exit off Interstate-135 (I-135) when he saw a white Cadillac "rolled past the stop sign . . . before coming to a stop" after exiting southbound I-135. Deputy Powell could tell that there were two people inside the Cadillac—a driver and a passenger. He later learned that Perez was the driver, and Perez' then girlfriend, Catherine Crosser, was the passenger. After seeing Perez roll past the stop sign, Deputy Powell decided to conduct a traffic stop. But Perez immediately made two left turns and got back onto I-135, headed northbound. Deputy Powell made a U-turn and followed Perez. Deputy Powell turned on his emergency lights as he reached the top of the northbound I-135 on-ramp.

Perez did not comply with Deputy Powell's signal to stop. Over the next 14 minutes, Deputy Powell chased Perez at speeds of 110 to 135 mph. Although the chase began on I-135, Perez turned east on Kansas Highway 196 (K-196). Then, just south of Potwin, Kansas, which is in Butler County, Perez turned south onto a country road. Last, Perez turned east onto Northwest 70th Street. It was on Northwest 70th Street that Perez' Cadillac overheated and stalled.

2

Once the Cadillac stalled, Perez and Crosser abandoned the car and ran to a nearby hedgerow. Before abandoning the car, however, Perez grabbed a rifle and Crosser grabbed a shotgun that they had stored in the Cadillac.

Deputy Powell was far enough behind Perez and Crosser that he did not see them abandon their car. When he came upon the stalled Cadillac, he got out of his patrol car and searched it to determine if anyone was inside. Once he determined nobody was in the Cadillac, Deputy Powell headed to a nearby outbuilding where he thought Perez and Crosser may be hiding. As Deputy Powell began the search, he saw Perez and Crosser running behind the hedgerow. Deputy Powell began yelling at Perez and Crosser to stop. Crosser responded by moving behind some trees so Deputy Powell could no longer see her. Perez responded by taking several steps away from Crosser before raising his rifle to his shoulder and aiming it at Deputy Powell. As Deputy Powell yelled, "Drop the gun" at Perez, Crosser shot Deputy Powell.

Several shotgun pellets hit the right side of Deputy Powell's body. One pellet entered Deputy Powell's right eye, resulting in him losing 70% of his field vision. Although Deputy Powell could no longer see out of his right eye, Deputy Powell heard at least three rounds fired at him. Accordingly, Deputy Powell returned fire and retreated. Shortly after Deputy Powell retreated, members of the Butler County Sherriff's Department arrived on scene.

Next, Perez and Crosser fled across a field to a neighboring property owned by James Babcock. Perez and Crosser opened Babcock's two parked cars looking for keys. As Perez and Crosser were rummaging through Babcock's cars, Butler County Sherriff's Deputy William Baker drove by the Babcock property. Deputy Baker noticed that Perez and Crosser matched the description of the people who shot Deputy Powell. Once Deputy Baker stopped his patrol car in front of the Babcock property, Perez picked up his rifle, pointed it at Deputy Baker, and fired on Deputy Baker at least three times. Although

3

Deputy Baker was not hit, one bullet lodged in the center of the driver's side door of his car.

Deputy Baker returned fire from his patrol car. Perez and Crosser responded by fleeing across another field. Eventually, Butler County Sheriff's Deputies created a perimeter around this field. After threatening to kill another sheriff's deputy, as well as threatening to kill Crosser should the deputies not let him get away, a highway patrol trooper shot Perez when he refused to comply with the trooper's commands to drop his gun. Perez and Crosser were arrested after the trooper shot Perez.

During the ensuing investigation, sheriff's deputies found two spent rifle cartridges at the location where Perez shot at Deputy Powell and one spent rifle cartridge outside Babcock's car where Perez shot at Deputy Baker. They found one spent shogun shell in the area where Crosser shot at Deputy Powell. Moreover, inside the Cadillac, they found one baggie of marijuana, three baggies of methamphetamine, methamphetamine pipes, a digital scale, many live rifle cartridges and shotgun shells, as well as a handgun. A bullet proof vest was in the trunk.

*Sedgwick County Case*

On March 15, 2013, in Sedgwick County case No. 13 CR 719, the State charged Perez with three counts of attempted first-degree murder, three counts of criminal possession of a firearm, two counts of burglary, and one count each of aggravated assault on a law enforcement officer, criminal threat, fleeing and eluding a law enforcement officer, possession of methamphetamine, possession of marijuana, and criminal damage to property. For the three counts of attempted first-degree murder, two of the counts involved the attempted first-degree murder of Deputy Powell; the State charged Perez for the attempted first-degree murder of Deputy Powell as the principal and the attempted first-degree murder of Deputy Powell as Crosser's accomplice. The remaining count

4

involved the attempted first-degree murder of Deputy Baker. The two counts of burglary involved Perez' entry into Babcock's parked cars. The count of criminal damage to property involved damage to the outbuilding that Deputy Powell was near when Perez and Crosser shot at him.

The trial court appointed Gary Owens to represent Perez. After Owens' appointment, Perez continued his preliminary hearing three times. Perez' appearance docket states that "no record [was] taken" when the trial court granted these continuances. At Perez' July 31, 2013 preliminary hearing, the trial court found that probable cause supported each of the charges in Perez' complaint. At the end of the hearing, Perez formally waived arraignment, entering not guilty pleas to all the charges.

From July 31, 2013, to February 24, 2014, Perez continued his jury trial five times. Again, Perez' appearance docket states that "no record [was] taken" when the trial court granted these continuances. On February 27, 2014, Perez filed a pro se motion requesting new counsel. In this motion, Perez alleged that Owens moved for continuances without his consultation. He asserted that Owens "allowed [his] trial to be set past [the] speedy trial" time limitations. On March 7, 2014, the trial court held a hearing on this motion. At the hearing, Owens stated that he continued the case because he needed more time to pursue Perez' trial defense of "voluntary intoxication." The trial court denied Perez' motion for new counsel.

Perez' jury trial was then set for March 31, 2014. Nevertheless on that date, Perez continued his jury trial. On April 8, 2014, Perez filed another pro se motion requesting new counsel. In this motion, Perez again complained about Owens continuing his case without his consultation and a potential violation of his speedy trial rights. The trial court held a hearing on Perez' motion on April 18, 2014. At the hearing, Perez complained about Owens' lack of communication with him. And Owens agreed that the attorney-client relationship had broken down. After warning Perez that the appointment of new

5

counsel would further delay his trial date, the trial court appointed Perez new counsel. On April 29, 2014, the court officially appointed Tim Scimeca to represent Perez.

After the trial court appointed Scimeca, Perez continued his case four more times, but Perez consented to these continuances. On March 27, 2015, however, Perez, through Scimeca, moved to dismiss all the charges based on statutory and constitutional speedy trial violations. Perez argued that Owens never consulted him about the continuances. Thus, he argued that for speedy trial purposes, the State was responsible for the next year that Owens represented him. The State responded there was no evidence that Owens did not consult Perez. It also pointed out that under K.S.A. 2014 Supp. 22-3402(g), even if the continuances became attributable to the State, the change in time delay could "not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay."

On April 10, 2015, the trial court held an evidentiary hearing on Perez' motion, where both Owens and Perez testified. Owens testified that after the court first appointed him, he told Perez "that this case was going to be continued probably a number of times" because of the doctors' opinions and medical records involved with his voluntary intoxication defense. Owens admitted that after notifying Perez that there would be several continuances, he did not "specifically [ask] him about every individual continuance." But he also asserted that "[t]he need for continuances and the reason for the continuances was the subject of ongoing communication between [Perez] and [himself]."

Perez started his testimony by stating that he barely remembered his and Owen's initial meeting. He then agreed that during his first meeting with Owens, they discussed continuances. He alleged, however, that he asked Owens not to continue the case without a hearing where he was present so he could object if he wanted. But, on cross-examination, Perez testified that he understood that without certain doctors' opinions and

medical reports, his case was not ready for trial. He admitted that he "knew that [Owens] was waiting on those things." He explained that he would have liked Owens to have consulted with him nonetheless so he could be "enlightened . . . on why [they] needed the continuance and [he] wouldn't have had to objected." When asked about whether he would have objected to the continuances had he "been brought to court" for all the continuance hearings, Perez testified that he would have objected to not already having the doctors' opinions and medical records.

After hearing this evidence, the trial court denied Perez' motion, finding that the continuances made by Owens on behalf of Perez counted against Perez for speedy trial purposes. The trial court found that Owens generally consulted with Perez about the need for continuances, and Perez understood this. It also found that any assertion Perez would have objected to the continuances was "logically inconsistent with, and even contradictory" to Perez' planned defense of voluntary intoxication. At the end of the hearing, the State announced it may dismiss the charges and refile in Butler County in the upcoming days.

Three days later, on April 13, 2015—the day Perez' case was set for jury trial—the State officially moved to dismiss all charges against Perez with the intent to refile in Butler County. The prosecutor, Marc Bennett, asserted that after "reviewing all the facts" in Perez' case, he was "concerned . . . that [there was] a venue issue as to some of the counts." He stated again that "the venue issue as it's . . . come more into focus, would be—would be resolved only if the trial was held in Butler County." Perez objected to the dismissal based on a violation of his speedy trial rights. The trial court again rejected Perez' argument about a speedy trial. The trial court then granted the State's request to dismiss Perez' charges without prejudice.

7

Perez appealed the trial court's denial of his motion to dismiss based on speedy trial to this court. On March 17, 2017, this court dismissed Perez' appeal for lack of jurisdiction because the denied motion was not a final judgment adverse to Perez as required by K.S.A. 2016 Supp. 22-3602(a) and K.S.A. 2016 Supp. 22-3601(a). *State v. Perez*, No. 114,826, 2017 WL 1035373, at *4-5 (Kan. App. 2017) (unpublished opinion). In dismissing Perez' appeal, however, this court noted that Perez could raise his speedy trial claims in a direct appeal from his Butler County case. 2017 WL 1035373, at *4.

*Butler County Case*

While Perez pursued his appeal, the State filed charges against Perez in Butler County. On April 16, 2015, in Butler County case No. 15 CR 142, the State charged Perez with the exact same crimes it had charged him with in Sedgwick County case No. 13 CR 719. Later, the State dismissed the counts of aggravated assault against a law enforcement officer and criminal threat, as well as one count of criminal possession of a firearm. His charges otherwise remained the same. The Butler County trial court then appointed James Watts to represent Perez.

The State filed a "Memorandum of Understanding," where the Butler County District Attorney's Office notified the court that it was appointing Bennett and his co-counsel as assistant district attorneys to expedite Perez' trial. In this motion, the State noted that Perez' crimes spanned across Sedgwick, Harvey, and Butler Counties. The trial court approved of Bennett and his co-counsel's special appointment.

On April 23, 2015, Perez' case was set for preliminary hearing, but Watts asked for a continuance given his recent appointment to the case. He had not reviewed all the discovery. Perez complained about the continuance because he wanted to have his

preliminary hearing that day. The trial court granted the continuance because Watts needed to review the evidence. The trial court then asked Perez if he was interested in having Scimeca reappointed as his counsel in Butler County given that Scimeca was ready for trial. Perez responded that he did not want Scimeca to represent him because he no longer trusted Scimeca given that Scimeca "was trying to get [him] to sign a plea bargain."

On April 30, 2014, the trial court held Perez' preliminary hearing. At the end of the hearing, the trial court formally arraigned Perez. That same day, Perez filed a pro se motion to dismiss all the charges against him, alleging that the State had violated his statutory and constitutional speedy trial rights. He also alleged "prosecutorial misconduct, malicious prosecution, [and] wrongful imprisonment."

On June 15, 2015, Perez, through Watts, moved to dismiss his Butler County case because of alleged venue deficiencies in his Sedgwick County case. Watts argued that the State violated Perez' constitutional speedy trial rights. Watts explained:

> "2. With all due respect to the counsel and courts involved, even a cursory examination of the evidence in the preliminary hearing held in Butler County . . . makes crystal clear that venue was never, and could not have reasonably be asserted as, proper in Sedgwick County in this matter. No part of any of the multiple offenses charged in this matter had any connection to Sedgwick County from the very beginning. It began, in fact, in Harvey County. Dep. Powell testified at preliminary hearing that he observed a car getting of I-135, going south, and stop past the stop sign at I-135 and 125th St. That very road, 125th, *is* indeed the county line; according to Sedgwick County GIS mapping, the county line actually runs through the center of 125th street. If that is the case, [Perez'] failure to stop at or behind the stop sign rather than past it was an offense that occurred in Harvey County, not Sedgwick County . . . . The entirety of the charged offenses occur[ed] within Butler County, or some small part in Harvey County; there is no jurisdictional connection to Sedgwick County whatsoever."

9

Watts then alleged that it was "difficult to argue that the Sedgwick County authorities made this error in good faith." He asserted that "[t]he end result of this series of intentional acts—or massive failures—is that [Perez] was held for . . . over two years by a jurisdiction without the legal authority to prosecute his case." Based on the preceding, he argued (1) that Perez' Sedgwick County and Butler County cases should be considered one case for speedy trial purposes, and (2) that the nearly two years Perez spent in Sedgwick County custody should be charged against the State.

The State responded that Perez had suffered no speedy trial rights violation because it could have prosecuted Perez in Sedgwick County. The State argued that venue was proper in Sedgwick County under K.S.A. 22-2603, K.S.A. 22-2604, and K.S.A. 22-2608. The State conceded that "the northern-most, or westbound lane of 125th is in Harvey County, while the southernmost or eastbound lane is in Sedgwick County." Yet, the State stressed that Perez had to have driven down the eastbound lane of 125th Street because Perez got off of southbound I-135, rolled past the stop sign, and then turned left onto eastbound 125th Street to get back onto I-135, headed northbound. The State asserted that its "theory of the case [had] always been—and remain[ed]—that when [Perez] saw Deputy Powell's patrol car at the bottom of the southbound exit off of [I-135], [Perez] made the decision he was not going to be taken into custody." It argued that during the moments Perez was in the eastbound lane of 125th Street, he formed the intent to kill both Deputy Powell and Deputy Baker.

Next, the State noted that the Johnson County Sheriff's Office had active warrants for Perez' arrest, and the sheriff's office had placed detainers on Perez on April 3, 2013. The State attached the Johnson County Sheriff's Office's detainer requests and Perez' active bench warrants from Johnson County to its motion.

On June 17, 2015, the trial court held a hearing on Perez' motion. At the hearing, the parties agreed that based on information received from the Sedgwick County

10

Geographic Information Services Office, the Sedgwick County line runs "three feet north of the center line of 125th." Following arguments, the trial court denied Perez' motion to dismiss based on the violation of his speedy trial rights. The trial court essentially adopted the State's arguments about statutory and constitutional speedy trial. Concerning misconduct, it found that the prosecutor believed Sedgwick County was the proper venue, and the prosecutor's arguments that he believed Perez possessed the mens rea to attempt to kill Deputy Powell and Deputy Baker supported this finding. Therefore, there "was no malfeasance or attempt to gain a tactical advantage" by the prosecutor when it charged Perez in Sedgwick County.

Watts then requested a continuance of Perez' jury trial because he was still reviewing discovery. Watts explained that Perez had, on his own, sought an independent evaluation of toxicology reports, which he had not yet received. The trial court granted the continuance request and set Perez' jury trial for August 25, 2015.

Perez' jury trial was held from August 25, 2017, to August 31, 2015. Perez' defense hinged on him lacking the requisite mens rea for the attempted first-degree murder charges based on voluntary intoxication. The jury found Perez guilty on all counts, including the attempted first-degree murder of Deputy Powell as the principal and the attempted first-degree murder of Deputy Powell as an aider and abettor.

The trial court sentenced Perez to a controlling sentence of 427 months' imprisonment followed by 36 months' postrelease supervision. The trial court ran Perez' sentences for the attempted first-degree murder of Deputy Powell as the principal and the attempted first-degree murder of Deputy Powell as an accomplice concurrently.

11

*Are Perez' Convictions for the Attempted First-Degree Murder of Deputy Powell Multiplicitous?*

Whether a defendant's convictions are multiplicitous is a question of law over which this court has unlimited review. *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against "(1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) *multiple punishments for the same offense*." (Emphasis added.) *Schoonover*, 281 Kan. at 463. "Multiple punishments for the same offense" issues can fall into two categories: (1) multiple description cases—where the defendant is penalized for the same act under multiple statutes; and (2) multiple violations of the same statute cases—where the defendant is penalized more than once for the same conduct under the same statute. 281 Kan. at 464.

Here, Perez argues that his two convictions for the attempted first-degree murder of Deputy Powell falls under the second category. But, he admits that he is raising this argument for the first time on appeal.

Generally, this court will not consider issues raised for the first time on appeal. Yet, a few exceptions to this rule exist, including when the newly asserted theory involves only a question of law or when consideration of the issue is necessary to serve the ends of justice. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Perez invokes both of these exceptions while arguing this court can consider his argument for the first time on appeal.

As shown by our standard of review, whether a defendant has been convicted of multiplicitous crimes is a question of law. *Schoonover*, 281 Kan. at 462. Furthermore, because multiplicitous convictions implicate a defendant's right against double jeopardy, consideration of Perez' argument that his convictions are multiplicitous is necessary to serve the ends of justice. See *State v. Walker*, 283 Kan. 587, 609, 153 P.3d 1257 (2007) (holding that the court would consider Walker's multiplicity argument raised for the first time on appeal because it was necessary to serve the ends of justice). Thus, for these reasons, this court will consider Perez' multiplicity challenge even though he has raised it for the first time on appeal.

With this established, it is readily apparent that Perez' convictions for the attempted first-degree murder of Deputy Powell as the principal and the attempted first-degree murder of Deputy Powell as the accomplice are multiplicitous. Both convictions are for the exact same crime—a violation of K.S.A. 2017 Supp. 21-5402(a)(1), the first-degree murder statute, and a violation of K.S.A. 2017 Supp. 21-5301, the attempt statute. Moreover, both convictions cover the exact same acts. The State sought Perez' "principal" conviction for *Perez' decision to shoot at Deputy Powell after his car stalled*. The State sought Perez' "accomplice" conviction for Perez' decision to help Crosser attempt to murder Deputy Powell. Acts supporting that Perez was Crosser's accomplice include *Perez' decision to shoot at Deputy Powell with Crosser after his car stalled*. In addition, the State concedes that Perez' two convictions for the attempted first-degree murder of Deputy Powell are multiplicitous.

Accordingly, Perez has established that his two attempted first-degree murder convictions of Deputy Powell are multiplicitous. Because the attempted first-degree murder of Deputy Powell as the principal was Perez' primary offense, we reverse Perez' attempted first-degree murder of Deputy Powell as an aider and abettor.

*Was Perez Prejudiced by His Lack of Appearance at Certain Continuance Hearings?*

Whether a defendant's right to be present at a critical stage of his or her proceedings has been violated constitutes a question of law over which this court's review is unlimited. *State v. Wright*, 305 Kan. 1176, 1178, 390 P.3d 899 (2017).

Our Supreme Court has determined that a continuance hearing is a critical stage of a defendant's criminal case, meaning the defendant has the right to be present at that hearing. This is because the granting of a continuance affects the defendant's speedy trial status. 305 Kan. at 1178; see K.S.A. 2017 Supp. 22-3402(a). The *Wright* court explained that "if a personal objection from the defendant is going to be more than a hollow gesture, it needs to be heard and adjudicated in the district court." 305 Kan. at 1178.

The converse of this holding is that if the defendant's objection would have been just a hollow gesture, the defendant's absence at a continuance hearing cannot result in prejudicial error. Moreover, the defendant's absence at the continuance hearing may be declared harmless when the State establishes that no reasonable possibility that the outcome of the defendant's trial would have been different existed. See 305 Kan. at 1178-79. This is why "if a defendant is denied his or her right to be present and object at a continuance hearing, and the continuance is granted, it is unlikely there will be a remedy on appeal even if an appellate court later attributes the continuance time to the State." 305 Kan. at 1178.

The register of actions in this case states that the trial court took no record at each of the nine hearings where Owens requested a continuance. Nevertheless on appeal, the parties do not dispute that Perez was not present at the continuance hearings where Owens continued his case. Further, at the speedy trial evidentiary hearing, Owens admitted that he did not "specifically [ask Perez] about every individual continuance."

14

Instead, in his brief Perez asserts that if he was present at those continuance hearings, he would have objected to Owens' continuance requests. He emphasizes his testimony at the speedy trial evidentiary hearing where he complained about not obtaining the evidence necessary for his voluntary intoxication defense faster and his attorneys proceeding on a "guilt-based type of a defense." Of note, at Perez' speedy trial evidentiary hearing, he testified that he did not understand why his attorneys continued to pursue a voluntary intoxication defense because he had never admitted his guilt. He testified that "to this day," he had not "seen any evidence to convince [him of his guilt]." Accordingly, Perez now argues that these complaints at the speedy trial evidentiary hearing establish that he would have objected to the continuances had he been present. In turn, he argues his absence at the continuance hearings was prejudicial error because "it [was] possible that [he] would have been tried in Sedgwick County," which he believes was the improper venue.

Yet, as the State has stressed in its brief, at the speedy trial evidentiary hearing, Perez admitted that he needed the continuances Owens requested to fully formulate his voluntary intoxication defense. Again, during cross-examination, Perez testified to the following: (1) that because he did not have the doctors' opinions and medical reports, his case was not ready for trial; (2) that he "wouldn't have had to objected" if Owens only explained why they needed a continuance; and (3) that had he been present at the continuance hearings, he would have objected to the fact that Owens did not already have the doctors' opinions and medical records, but not specifically to the continuance.

Perez' statements clearly establish that he understood that his case was not ready for trial until he received the doctors' opinions and medical records that his voluntary intoxication defense depended on. Further, his statements establish that he was upset that the defense had not yet received the opinions and reports. But his statements do not establish that he would have objected to the continuances Owens requested had he been

15

present at the continuance hearings. Instead, Perez would have objected to the fact Owens had not yet received the opinions and records.

Additionally, at the speedy trial evidentiary hearing, Owens provided detailed testimony why it was taking so long to get the doctors' opinions and medical records in Perez' case. He explained that he discussed the voluntary intoxication defense with Perez within a week of his appointment, which was on May 1, 2013. He explained that he received an initial report from a doctor on August 22, 2013, but the report was not very helpful. Owens asserted that based on this unhelpful doctor's report, he believed that Perez needed a better report, as well as an evaluation from a psychiatrist and toxicologist. He then took additional steps to get the medical information they needed over his next year of representing Perez. Owens explained that he relayed the status of the doctors' opinions and medical reports to Perez on an ongoing basis.

Accordingly, the evidence from the speedy trial evidentiary hearing shows that Perez was frustrated with the fact that Owens did not yet have the doctors' opinions and medical records necessary for his voluntary intoxication defense. But the evidence from the hearing also establishes that Owens was doing what he could to obtain the evidence. In short, this is a situation where the defendant was upset at how long it took for his defense counsel to procure evidence, even though the time it took for counsel to procure evidence was merely a consequence of defendant's chosen defense. It necessarily takes time to obtain doctor's opinions, psychologist reports, and medical records for a successful voluntary intoxication defense. Defendants who pursue such defenses cannot legitimately complain about a reasonable delay in trial which results from their pursuit of the defense. Moreover, as noted by the trial court in rejecting Perez' argument, one of the doctors had not completed his report until after Owens was no longer Perez' counsel.

Next, Perez' arguments about his unhappiness with his attorneys pursuing a voluntary intoxication defense are irrelevant in regards to his absence at the continuance

16

hearings. First, Owens, not Perez, controlled Perez' trial strategy. See *State v. Smith*, 16 Kan. App. 2d 478, 482, 825 P.2d 541 (1992) (holding that in Kansas, "trial strategy is left up to the trial attorney"). Thus, had Perez raised any complaints about Owens' chosen trial strategy of voluntary intoxication during the continuance hearing, the trial court would have rejected Perez' argument on this basis. Second, the evidence against Perez in this case was overwhelming. He was taken from the scene of his crimes in an ambulance after being shot by a trooper; his abandoned car was located nearby—full of drugs and ammunition. Perez' unwillingness to acknowledge that the evidence against him was substantial indicates that Perez did not fully understand the nature of his defense or how much time was needed to craft an effective defense.

As a result, even if Perez had been present at the continuance hearings and objected, his objections would have been a hollow gesture as discussed by the *Wright* court. This is because Perez' testimony establishes that he did not oppose the continuances themselves. Instead, he opposed the time it took to obtain evidence—time that was necessary to effectively pursue his voluntary intoxication defense. Thus, the trial court properly found that had Perez been present at the continuance hearings, any objection by Perez would have been "logically inconsistent with, and even contradictory" to his defense. Therefore, under these facts, Perez' absence at the continuance hearings did not result in prejudice.

Last, Perez alleges that had he been present at the continuance hearings and objected "it [was] possible that [he] would have been tried in Sedgwick County." Yet, based on the preceding, we know that any of Perez' objections would have been hollow gestures, which the trial court would have rejected. Thus, Perez' testimony establishes that had he been present at the continence hearings, the outcome of the continuance hearings would have been the same—the trial court would have granted Owens' requested continuances because the continuances were necessary to prepare Perez'

17

defense. Any error from Perez' absence at the continuance hearings was harmless beyond a reasonable doubt.

*Was Perez' Statutory Right to a Speedy Trial Violated?*

Whether a defendant's statutory speedy trial rights have been violated constitutes a question of law over which this court has unlimited review. *State v. Dupree*, 304 Kan. 43, 48, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016).

K.S.A. 2017 Supp. 22-3402(a)—the statutory speedy trial statute—states:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within *150 days after such person's arraignment* on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant or a continuance shall be ordered by the court under subsection (e)." (Emphasis added.)

Subsection (g) of K.S.A. 2017 Supp. 22-3402, however, provides two exceptions to this rule:

"If a defendant, or defendant's attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, *unless there is prosecutorial misconduct related to such delay*. If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such *delay would result in a violation of the constitutional right to a speedy trial* or *there is prosecutorial misconduct related to such delay*." (Emphasis added.)

18

As stated under K.S.A. 2017 Supp. 22-3402(a), the statutory speedy trial clock begins to run upon the defendant's arraignment or waiver of arraignment. It ends upon the start of the defendant's trial or the dismissal of the defendant's case. K.S.A. 2017 Supp. 22-3402(a); see *State v. Goss*, 245 Kan. 189, 192, 777 P.2d 781 (1989).

Thus, in this case, the following dates are important for statutory speedy trial purposes: Perez waived arraignment in his Sedgwick County case on July 31, 2013. The State dismissed Perez' charges in Sedgwick County case No. 13 CR 719 on April 13, 2015. For his Butler County case, the trial court arraigned Perez on April 30, 2015. Perez' jury trial began on August 25, 2015. As a result, from his waiver of arraignment in the Sedgwick County case on July 31, 2013, to the State's dismissal of his charges in that case on April 13, 2015, 621 days passed. From his arraignment in his Butler County case on April 30, 2015, to the start of his trial on August 25, 2015, 117 days passed.

Nevertheless, Perez took many continuances throughout his cases. Following his preliminary hearing on July 31, 2013, in his Sedgwick County case, Perez asked for continuances from September 23, 2013, until the date the State dismissed his charges in the Sedgwick County case on April 13, 2015. Following his preliminary hearing in his Butler County case, he also asked for a continuance from June 17, 2015, until August 25, 2015, which was the start of his trial.

Adding together the total number of days between all of Perez' requested continuances after his arraignment dates, we can determine how much of the delay was attributable to Perez for statutory speedy trial purposes. For his Sedgwick County case, 567 days of the 621 days were attributable to Perez' continuances. The remaining 54 days were attributable to the State. For his Butler County case, 69 days of the 117 days were attributable to Perez' continuance requests. The remaining 48 days were attributable to the State.

19

On appeal, Perez' statutory speedy trial argument hinges on establishing that prosecutorial misconduct existed. Perez argues that his continuances are irrelevant because the real reason his case did not go to trial sooner was the prosecutor's decision to charge him in Sedgwick County; he believes that Sedgwick County was an improper venue for many of his crimes. Thus, Perez argues that despite his requested continuances, he has established that the State violated his statutory speedy trial rights under K.S.A. 2017 Supp. 22-3402(g)'s exception that a "delay shall be charged to the defendant regardless of the reasons for making the request, *unless there is prosecutorial misconduct related to such delay*." (Emphasis added.)

*Assumption of Exceptional Circumstances*

First, as noted by the State, Perez assumes that this court will consider his dismissed Sedgwick County case along with his Butler County case for statutory speedy trial purposes. But in *Goss*, our Supreme Court explained:

> "Ordinarily, the [150]-day provision of K.S.A. 22-3402 commences to run only at the time of arraignment, and time involved prior thereto including prior dismissal of the same or similar charges is not included. An exception thereto occurs when the dismissal of a prior case and the subsequent refiling constitute a subterfuge to avoid the effect of the statute." *Goss*, 245 Kan. 189, Syl. ¶ 2.

By not explaining how the State engaged in a ploy to avoid the effect of the speedy trial statute, Perez has abandoned any argument that he may have had. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). Even if we consider Perez' continuances in his Butler County case, the State brought Perez to trial 117 days after his arraignment. Thus, the State brought Perez to trial within K.S.A. 2017 Supp. 22-3402(a)'s 150-day time limit. As a result, Perez' failure to explain how the State's dismissal of his Sedgwick County case was a subterfuge to avoid dismissal under the speedy trial statute is fatal to his argument.

20

*Concurrent Detainers*

Second, Perez was not in jail solely on the charges at issue here while he was awaiting trial. K.S.A. 2017 Supp. 22-3402(a)'s 150-day time limit applies only to "person[s] charged with a crime and *held in jail solely by reason thereof* . . . ." (Emphasis added.) Thus, the State need not bring persons who are in jail for crimes stemming from separate cases to trial within 150 days of their arraignment.

In his brief, Perez recognizes that while he was in the Sedgwick County jail, the Johnson County Sheriff's Department placed two separate detainers on him because he had two active Johnson County bench warrants. The Johnson County Sheriff's Department placed the detainers on Perez on April 3, 2013. All the same, Perez argues that the fact he was being held on three cases at the same time should not hinder his statutory speedy trial argument because the record "does not show that [he] would have been held in the Sedgwick [County] Jail, for over two years, solely on account of [the] Johnson County detainers."

But the record *does show* that Perez was held for over two years in the Sedgwick County jail, not only on his current charges, but also on the Johnson County detainers. The Johnson County Sheriff's Department placed the detainers on Perez because he had two active bench warrants where he failed to appear in two distinct cases:  (1) he failed to appear in Johnson County case No. 12 CR 02733 on March 1, 2013; and (2) he failed to appear in Johnson County case No. 11 CR 02594 on March 8, 2013. His bond in those cases was $7,000 and $100,000, respectively. Furthermore, the record establishes that for Johnson County case No. 11 CR 02594, Perez was on probation for criminal threat, a felony, and possession of marijuana, a misdemeanor. Of note, in *State v. Montes-Mata*, 41 Kan. App. 2d 1078, 1081, 208 P.3d 770 (2009), *aff'd* 292 Kan. 367, 253 P.3d 354 (2011), this court explained:  "A defendant is not being held solely on the pending

21

charges if separate criminal charges are pending against the defendant or the defendant is being held for a parole or probation violation."

Perez' complaints about how long he was in the Sedgwick County jail awaiting trial are irrelevant under the plain language of K.S.A. 2017 Supp. 22-3402(a). K.S.A. 2017 Supp. 22-3402(a) states that its 150-day time limit applies if a person is "held in jail solely by reason" of his or her current charges. Clearly, the plain language of K.S.A. 2017 Supp. 22-3402(a) trumps Perez' argument about how long he was held in the Sedgwick County jail awaiting trial because he was not being held solely in jail on the Sedgwick County charges.

The most fundamental rule of statutory construction is that the intent of the Legislature, as established by the plain language of the statute, governs. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Here, the Legislature's only concern is whether a defendant is being held in jail on more than one charge. Thus, under K.S.A. 2017 Supp. 22-3402(a), the State must bring persons to trial within 150 days of their arraignment only if such persons are "charged with a crime and held in jail solely by reason thereof." In this case, however, Perez was being held for his current crimes and warrants stemming from his Johnson County case No. 12 CR 02733 and Johnson County case No. 11 CR 02594. For this reason, K.S.A. 2017 Supp. 22-3402(a) is inapplicable because Perez failed to satisfy the statutory speedy trial requirement of this subsection.

*Prosecutorial Misconduct*

In *State v. Sherman*, 305 Kan. 88, Syl. ¶ 11, 378 P.3d 1060 (2016), our Supreme Court defined what acts constitute prosecutorial misconduct:

> "Prosecutorial acts properly categorized as 'prosecutorial misconduct' are erroneous acts done with a level of culpability that exceeds mere negligence. A

22

prosecutor who acts with knowledge and intent outside the wide latitude afforded prosecutors, or with a malicious or gross disregard for the fair trial rights of the defendant, is subject to sanction for such misconduct in a separate proceeding outside the confines of the criminal case within which the misconduct occurred."

Significantly, Perez assumes that the *Sherman* court's definition of "prosecutorial misconduct," as opposed to "prosecutorial error" applies in this case. The *Sherman* court adopted the term "prosecutorial error," and distinguished that term from "prosecutorial misconduct," after the Legislature's 2012 amendment to K.S.A. 22-3402. The 2012 amendment added the "prosecutorial misconduct" exception to subsection (g). Thus, there could be debate what the Legislature means when using the term "prosecutorial misconduct" in subsection (g). Regardless, because Perez has not briefed this issue and accepts the *Sherman* court's definition of "prosecutorial misconduct," we will address subsection (g) references "prosecutorial misconduct" as defined by the *Sherman* court. See *Williams*, 303 Kan. at 758 (holding that appellants abandon issues that are not briefed).

For purposes of addressing Perez' underlying allegation of misconduct, this court must focus on Perez' contention that the prosecutor had no legal authority to charge him in Sedgwick County for the attempted first-degree murder of Deputy Powell, the attempted first-degree murder of Deputy Baker, the vehicular burglaries, and the criminal damage to property. Because venue is jurisdictional, Perez argues that the prosecutor lacked jurisdiction to charge him in Sedgwick County for these crimes. See *State v. Kendall*, 300 Kan. 515, 530, 331 P.3d 763 (2014) (explaining that venue is jurisdictional). In support of his argument, Perez attacks each of the venue statutes that the prosecutor relied on in while asserting he could have successfully obtained convictions in Sedgwick County—K.S.A. 22-2603, K.S.A. 22-2604, and K.S.A. 22-2608. Based on his belief that the prosecutor had no legal authority to charge him in Sedgwick County, Perez asserts that he has established prosecutorial misconduct. The State

23

responds by defending its reliance on K.S.A. 22-2603, K.S.A. 22-2604, and K.S.A. 22-2608.

*Venue Statutes Inapplicable*

K.S.A. 22-2603 states: "Where *two or more acts* are requisite to the commission of any crime and *such acts occur in different counties* the prosecution may be in any county in which any of such acts occur." (Emphasis added.) Our Supreme Court has explained that "[f]or K.S.A. 22-2603 to apply, *an overt act* must occur in one county and *the effects of such overt act*, which are necessary to complete the crime, must occur in another county." (Emphasis added.) *State v. Calderon*, 233 Kan. 87, Syl. ¶ 2, 661 P.2d 781 (1983). An "overt act" is "[a]n outward act done in pursuance and manifestation of an intent or design. An open act, which must be manifestly proved." *State v. Crockett*, 26 Kan. App. 2d 202, 203, 987 P.2d 1101 (1999) (quoting *State v. Hill,* 252 Kan. 637, 642, 847 P.2d 1267 [1993]). Thus, for K.S.A. 22-2603 to apply, a defendant must commit overt acts, which are elements of the charged crime, in different counties. Stated another way, the defendant must commit the actus reus elements of the crime in different counties.

In its brief, the State argues that Sedgwick County was an appropriate venue under K.S.A. 22-2604 for the following reason: "[I]n the moments [Perez] was driving within Sedgwick County, he 'decided to run, that he would not be stopped by law enforcement, and that he would kill using one of the three guns inside the car.'" Thus, the State argues that when Perez drove on 125th Street, he formed the mens rea required for fleeing and eluding a law enforcement officer and attempting to murder Deputy Powell and Deputy Baker.

Yet, as Perez points out, K.S.A. 22-2603 only applies when "*two or more acts* are requisite to the commission of any crime and *such acts occur in different counties*."

24

(Emphasis added.) Simply put, under the plain language of K.S.A. 22-2603, as well as our Supreme Court's interpretation of K.S.A. 22-2603, K.S.A. 22-2603 only applies when the defendant committed overt acts elements of the crime in separate counties. A defendant's mens rea does not constitute an overt act. As a result, the State's contention that Sedgwick County was the proper venue for all of Perez' crimes based on Perez forming the requisite mens rea for those crimes in Sedgwick County must fail.

Next, K.S.A. 22-2604 states: "Where a crime is committed on or so near the boundary of two or more counties that *it cannot be readily determined* in which county the crime was committed, the prosecution may be in any of such counties." (Emphasis added.) Although this statute may be relevant to Perez' possession crimes and fleeing and eluding a police officer crime, Perez correctly argues that his attempted murders of Deputy Powell and Deputy Baker clearly occurred in Butler County. The same is true for Perez' vehicular burglaries and criminal damage to property crimes; these crimes clearly occurred in Butler County. Thus, Sedgwick County was not the proper venue for Perez' two attempted first-degree murders, two burglaries, and single criminal damage to property crimes under K.S.A. 22-2604.

Last, K.S.A. 22-2608 states:

"If a crime is committed in, on or against any vehicle or means of conveyance passing through or above this state, and *it cannot readily be determined* in which county the crime was committed, the prosecution may be in any county in this state through or above which such vehicle or means of conveyance has passed or in which such travel commenced or terminated." (Emphasis added.)

Just like K.S.A. 22-2604, K.S.A. 22-2608 only applies to crimes where "it cannot readily be determined in which county" the crime occurred. Yet, in this case, it was readily apparent that Perez' two attempted first-degree murders, two vehicular burglaries, and

25

single criminal damage to property crimes occurred in Butler County. Consequently, Sedgwick County was not the proper venue for those crimes under K.S.A. 22-2608.

As a result, the reasoning the prosecutor provided for why he charged Perez for all of his crimes in Sedgwick County was flawed. In turn, the reasoning the State continues to rely on in its brief, asserting that it could have validly convicted Perez for all of his crimes in Sedgwick County, is incorrect. Sedgwick County was not the proper venue for Perez' attempted first-degree murder crimes, vehicular burglary crimes, and criminal damage to property crime under the plain language of K.S.A. 22-2603, K.S.A. 22-2604, and K.S.A. 22-2608. But does the prosecutor's flawed reasoning mean that the prosecutor engaged in misconduct?

### *No Misconduct*

Under our Supreme Court's standard in *Sherman*, to constitute misconduct, the prosecutor must act "with knowledge and intent outside the wide latitude afforded prosecutors, or with a malicious or gross disregard for the fair trial rights of the defendant." *Sherman*, 305 Kan. 88, Syl. ¶ 11. The prosecutor's "level of culpability" must "[exceed] mere negligence." 305 Kan. 88, Syl. ¶ 11. Based on this language, honest mistakes by prosecutors do not constitute prosecutorial misconduct. Instead, prosecutorial misconduct involves prosecutors taking an action that the prosecutor knows to be wrong.

In his brief, Perez does not explain why the prosecutor's decision to charge him in Sedgwick County constitutes misconduct, as opposed to simple error. Maybe Perez believes that the prosecutor must have known that the Sedgwick County venue was inappropriate because it was not supported by the plain language of K.S.A. 22-2603, K.S.A. 22-2604, and K.S.A. 22-2608. Nevertheless, this is only an assumption.

26

Moreover, in the Sedgwick County case, when the prosecutor first came forward and stated there may be a problem with venue, the prosecutor stated that he was "concerned . . . that [there was] a venue issue as to some of the counts," which "would be resolved only if the trial was held in Butler County." The prosecutor stated that these issues had just come to light when doing the final prep work for trial. Thus, nothing from the prosecutor's statements suggests that he was aware of the venue issue at an earlier date. Moreover, when Perez further challenged the venue issue in the context of his speedy trial arguments during his Butler County case, the prosecutor explained how he had been relying on K.S.A. 22-2603, K.S.A. 22-2604, and K.S.A. 22-2608.

We note that the prosecutor's and State's continued position that the preceding venue statutes would have allowed the State to bring its entire case against Perez in Sedgwick County seems contrary to the prosecutor's decision to dismiss the Sedgwick County case and refile the charges against Perez in Butler County. For example, when the prosecutor dismissed the Sedgwick County case, he told the trial court the venue issue "would be resolved only if the trial was held in Butler County." Thus, the prosecutor implicitly conceded that the Sedgwick County venue was inappropriate for at least some of Perez' crimes. Perhaps, at some point, the prosecutor believed that he could bring the case under K.S.A. 22-2603, but he then realized how difficult it would be to establish Perez' intent to kill Deputy Powell and intent to kill Deputy Baker.

Regardless, the prosecutor's actions and statements throughout the case do not establish that he was purposely attempting to evade venue laws. If the prosecutor was trying to evade the venue laws, why would the prosecutor bring the venue issue to the attention of the Sedgwick County District Court in the first place? Moreover, what does the prosecutor have to gain by prosecuting Perez in an improper venue? Because venue is jurisdictional, why would the prosecutor want to try to obtain convictions against a defendant that any court could overturn on a jurisdictional defect?

27

Perez never attempts to answer these questions in his brief.

Although the prosecutor's interpretation of the venue statutes was incorrect, the evidence supports that the prosecutor sincerely erred in his interpretation. Thus, Perez has not established that the prosecutor engaged in misconduct.

Having established that the prosecutor did not engage in misconduct, Perez has not established that K.S.A. 2017 Supp. 22-3402(g)'s exception, where delays that would otherwise count against the defendant count against the State because the prosecutor engaged in misconduct, applies. As a result, we must count Perez' continuances against him under the plain language of K.S.A. 2017 Supp. 22-3402(g). Excluding Perez' continuances, only 54 days of delay was attributable to the State in the Sedgwick County case and only 48 days were attributable to the State in the Butler County case. Even if this court were to consider the State's delays in the Sedgwick County case and the Butler County case together, this constitutes only 102 days of the total delay in Perez' case, which is well below K.S.A. 2017 Supp. 22-3402(a)'s 150-day time limit. Consequently, we conclude that the State did not violate Perez' statutory speedy trial rights.

In summary, the State did not violate Perez' statutory speedy trial rights for several reasons. First, Perez failed to argue what exceptional circumstances allow this court to consider both his dismissed Sedgwick County case and his Butler County case together for statutory speedy trial purposes. By failing to make this argument, this court is limited to considering Perez' Butler County case, where the State brought him to trial within 117 days of his arraignment, well within the 150-day statutory speedy trial limitation under K.S.A. 2017 Supp. 22-2304(a). Second, in addition to being held in jail on the charges at issue in this case, Perez was also being held in jail on charges stemming from two different Johnson County cases throughout the duration of his Sedgwick County case. Accordingly, K.S.A. 2017 Supp. 22-3402(a)'s 150-day time limit was met. Thus, it does not apply to Perez because he was not being "held in jail solely by reason" of his current

28

charges. Third, although Sedgwick County was an improper venue for some of Perez' charges, nothing suggests that the prosecutor engaged in misconduct as defined by our Supreme Court in *Sherman*. Therefore, because Perez' continuances count against him, his statutory speedy trial rights were not violated.

*Was Perez' Constitutional Speedy Trial Right Violated?*

In *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the United States Supreme Court created factors that courts should consider when determining whether a defendant's speedy trial right under the Sixth Amendment to the United States Constitution has been violated. Those factors include the following:  "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his or her right, and (4) prejudice to the defendant." *State v. Gill*, 48 Kan. App. 2d 102, 108, 283 P.3d 236 (2012) (citing *Barker*, 407 U.S. at 530). "None of the factors are controlling in determining whether a defendant's constitutional right to a speedy trial has been violated, but the factors must be considered together with such other circumstances as may be relevant." 48 Kan. App. 2d at 108.

On appeal, Perez argues that each of the *Barker* factors weigh in his favor. Thus, Perez requests that this court reverse all of his convictions based on a violation of his constitutional speedy trial rights. As with his statutory speedy trial rights arguments, we note that there are problems with Perez' arguments concerning violation of his constitutional speedy trial rights.

*Length of Delay*

Unlike the statutory speedy trial clock, the constitutional speedy trial clock begins to run upon the defendant's arrest or charging, and it ends upon the State's dismissal of the defendant's case or the start of the defendant's trial. See 48 Kan. App. 2d at 107-08. In

determining whether the length of delay of a defendant's trial was presumptively prejudicial for constitutional speedy trial purposes, no set time limit for what constitutes a presumptively prejudicial delay exists. 48 Kan. App. 2d at 108. The more complex a crime, the more tolerable a longer delay. 48 Kan. App. 2d at 108-09. Nevertheless, if defendants fail to establish that their trial delay was presumptively prejudicial, then defendants fail to establish that they suffered a violation of their constitutional rights. *State v. Hayden*, 281 Kan. 112, 127, 130 P.3d 24 (2006).

Therefore, in this case, the following dates are important for constitutional speedy trial purposes: Law enforcement initially arrested Perez on March 11, 2013, after the trooper shot him. The State dismissed Perez' charges in Sedgwick County case No. 13 CR 719 on April 13, 2015. Thus, from arrest to dismissal, Perez' Sedgwick County case was pending 763 days, or 25 months and 2 days. The State refiled the charges against Perez in Butler County case No. 15 CR 142 on April 16, 2015. Law enforcement also rearrested Perez that day. Perez' jury trial began on August 25, 2015. Thus, from arrest to the beginning of his jury trial, Perez' Butler County case was pending 131 days, or 4 months and 9 days. In turn, when one considers Perez' Sedgwick County and Butler County cases together, Perez' cases pended 894 days, or 29 months and 11 days, from when he was arrested to when his trial began.

On appeal, Perez asserts that the length of delay—which he considers to be the over 29-month delay from date of his original arrest on March 11, 2013, to the date of his trial on August 25, 2015—was presumptively prejudicial. Nevertheless, like his statutory speedy trial argument, Perez seems to assume that this court will consider both his Sedgwick County and Butler County cases together for speedy trial purposes.

In *Gill*, this court explained "that when the State dismisses a charge and files another one, the constitutional speedy trial clock will start anew in the second case if the State dismissed the first case because of necessity or the charge in the second case is not

30

identical to the charge that was previously dismissed." 48 Kan. App. 2d at 113. The *Gill* court based its holding on the United States Supreme Court decision in *United States v. MacDonald*, 456 U.S. 1, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982).

Perez has abandoned his ability to connect his Sedgwick County and Butler County cases for constitutional speedy trial purposes by not including any arguments about the State's charges in both cases being identical or the State's dismissal not being out of necessity. See *Williams*, 303 Kan. at 758 (holding that appellants abandon issues not briefed.) Because he has abandoned his argument, we will consider only Perez' Butler County case for constitutional speedy trial purposes. This reasoning seems warranted given that in his appeal involving his Sedgwick County case, which this court dismissed for lack of jurisdiction, this court told Perez that the dismissal would not bar him from claiming that the time he spent in jail in his dismissed Sedgwick County case should be counted for speedy trial purposes. Thus, this court put Perez on notice that he could invoke certain exceptions within caselaw that would allow this court to consider both his dismissed case and current case for speedy trial purposes. *Perez*, 2017 WL 1035373, at *4. Still, Perez failed to invoke these exceptions.

Nevertheless, even if Perez had not abandoned his argument, Perez could not establish that this court should consider the Sedgwick County case and Butler County case together for constitutional speedy trial purposes. This is because the entirety of Perez' speedy trial argument hinges on the State engaging in prosecutorial misconduct. Thus, Perez needed to show that the State deliberately prosecuted him for 25 months in a venue which it knew or should have known was inappropriate.

As we held earlier under our "*No Misconduct*" section of our opinion, the prosecutor did not act with "a level of culpability that exceeds mere negligence," with "knowledge and intent outside the wide latitude afforded prosecutors," or "with a malicious or gross disregard for the fair trial rights of the defendant" as required to

31

commit prosecutorial misconduct under the *Sherman* standard. 305 Kan. 88, Syl. ¶ 11. For these reasons, we will consider only the 4-month and 9-day delay that occurred from Perez' rearrest on April 16, 2015, to the start of his trial on August 25, 2015, in his Butler County case.

In the past, our Supreme Court has held that a 13-month delay in a difficult murder case with very little physical evidence was not presumptively prejudicial. *Hayden*, 281 Kan. at 128. A delay of a little over one year in a murder case was not presumptively prejudicial. *Goss*, 245 Kan. at 193. Moreover, a delay of a little more than 12 months in a murder and an aggravated battery of a law enforcement officer case was not presumptively prejudicial. *State v. Green*, 260 Kan. 471, 474, 920 P.2d 414 (1996). Indeed, on average, it seems the State must delay a defendant's trial around two years before appellate courts have found the delay presumptively prejudicial. See *State v. Waldrup*, 46 Kan. App. 2d 656, 680, 263 P.3d 867 (2011) (holding that a simple case and a 23-month delay was presumptively prejudicial); *State v. Clemence*, 36 Kan. App. 2d 791, 799, 145 P.3d 931 (2006) (holding that a more than two-year delay in a drug charges case was presumptively prejudicial).

Here, this case involved some complexities, including doctors' opinions involving Perez' mental state. The State needed forensic analysis on the weapons and drugs. Additionally, Perez' case ultimately involved 11 separate counts, ranging from attempted first-degree murder to possession of marijuana. Thus, not surprisingly, it would take some time for the State to bring Perez' case to trial. Consequently, based on precedent, as well as the complexities of Perez' case, the 4-month and 9-day delay was not presumptively prejudicial.

Because the State's delay in Perez' case was not presumptively prejudicial, we do not need to consider the remaining *Barker* factors. *Hayden*, 281 Kan. at 127 (holding that consideration of the remaining *Barker* factors is unnecessary when the defendant fails to

establish that the delay was presumptively prejudicial). As a result, we hold that the State did not violate Perez' constitutional speedy trial rights by the 4-month and 9-day delay of trial and affirm.

Affirmed in part, vacated in part, and remanded with directions.